Joseph P. RILEY, Jr., and Patricia Riley, Appellants,

v.

The FARMERS FIRE INSURANCE COMPANY Appellee.

Superior Court of Pennsylvania.

Argued June 16, 1999.

Filed July 21, 1999.

Alan H. Casper, Glenside, for appellants.

Joseph J. Vanjura, Wilkes-Barre, for appellee.

Before DEL SOLE and STEVENS, JJ., and CIRILLO, President Judge Emeritus:

CIRILLO, President Judge Emeritus:

¶ 1 Joseph P. Riley, Jr. and Patricia Riley appeal from the order entered in the Court of Common Pleas of Luzerne County vacating an order confirming an umpire's appraisal award in the amount of $8,650.00 and striking a judgment in their favor. We reverse.

¶ 2 In January of 1996, the Rileys suffered property damage due to snow and ice. At the time of this damage, they were insured by Appellee, The Farmers Fire Insurance Company ("Farmers"), pursuant to a homeowners' policy. Farmers and the Rileys agreed that the loss was covered under the parties' policy; however, the parties were unable to agree upon the actual amount of loss suffered. This issue was submitted to appraisal, pursuant to the policy's appraisal provision. The provision reads as follows:

6. Appraisal. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt [by] written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us. [Emphasis in original]

When the parties' chosen appraisers could not agree upon a "competent, impartial umpire" to oversee the appraisal, the Ri-

leys petitioned the court of common pleas to appoint an umpire. On April 3, 1998, the court selected Matthew McGowan to serve as the umpire.[1]

¶ 3 On April 27, 1998, McGowan circulated a proposed appraisal award, in the amount of $8,650.00, to the parties' appraisers.[2] In response to McGowan's letter, Farmers orally and in writing requested that McGowan clarify his award and include a specific breakdown of how he reached his decision. Without this itemized information, Farmers claimed it was unauthorized to pay any loss claim to the Rileys. Farmers never received the requested itemization from McGowan.

¶ 4 The Rileys' appraiser signed the proposed award written by McGowan, thus setting the amount of loss at $8,650.00. On August 13, 1998, the Rileys filed a petition with the court to confirm/enforce the appraisal award and enter judgment. The court confirmed the award and reduced it to a final judgment.

¶ 5 On August 29, 1998, Farmers filed a motion for a rule to show cause why the court should not vacate/amend the judgment entered on the appraisal award. In its motion, Farmers claimed that the amount of the award exceeded the amount of claimed damages covered under the insurance policy and that the appraisal process, as outlined in the insurance policy provision, had not been followed. Moreover, Farmers asserted that the umpire's refusal to itemize the damages in his report precluded the insurance company from making any payment of a potentially valid claim to the Rileys "because payment of any loss is subject to other relevant terms and provisions of the policy, including types of coverage, exclusions, depreciations, conditions and limits of coverage." Pending a hearing on this motion, the court suspended enforcement of the award.

¶ 6 On October 5, 1998, after hearing oral argument and the submission of briefs by the parties, the trial court vacated the order confirming the Rileys' appraisal award and struck the judgment entered against Farmers. The Rileys filed a timely appeal and present the following issues for our consideration:

(1) Whether insurance appraisals are common law arbitrations enforceable pursuant to 42 Pa.C.S. § 7342(b)?

(2) Whether objections to insurance appraisal awards, like objections to common law arbitrations, must be raised by petition with[in] thirty (30) days of the award or [be] lost?

(3) Whether a court may set aside an insurance appraisal award for any reason other than fraud, deception or mistake, which is not a mere mistake of judgment, when an insurance appraisal award has been challenged within thirty (30) days of the award?

(4) Whether "irregularity," within the meaning of 42 Pa.C.S. § 7341, refers to an impropriety in the process and not to an alleged improper measure of damages?

1. The April 3, 1998 court order appointing an umpire for the parties stated:
    [T]he Court, after due deliberation, hereby appoints: MATTHEW MCGOWAN 442 LAHM AVE. OF HAZELTON PA 18201 459–2752 as the umpire **to consider the differences, if any, of the named appraisers to set the amount of loss of the property damage claims under the terms of the policy of insurance issued by Prudential Property and Casualty Insurance to the Petitioners [the Rileys] above.**

2. The umpire's proposed appraisal order stated:

    AND NOW, this 27th day of April, 1998, Matthew M. McGowan, as the Court[-]appointed Umpire in the above-captioned matter for Appraisal, after due deliberation, hereby sets the amount of loss at $8,650.00.
    The respective Appraiser(s) are required to affix their signatures and should either concur with the Umpire's decision or disagree. Any two (2) out of the three (3) parties, who concur with said award would complete this process and set the amount of the loss.

(5) Whether the court erred when it vacated its prior confirmation of an insurance appraisal award and entry of judgment because the court ignored the well established law of the Commonwealth regarding the enforcement of insurance appraisal awards?

¶ 7 Before addressing the substantive merits of this appeal, we must first determine whether the order from which the Rileys appeal is properly before us for appellate review. We note that the appealability of an order is a question of jurisdiction and may be raised *sua sponte.* *French v. United Parcel Service*, 377 Pa.Super. 366, 547 A.2d 411 (1988).

¶ 8 In *McGourty v. Pennsylvania Millers Mutual Ins. Co.*, 704 A.2d 663 (Pa.Super.1997), a panel of this court held that an order vacating an appraisal award and directing further proceedings with a new appraisal panel is interlocutory and not appealable. Moreover, the court found that the non-final order did not satisfy the requirements of the collateral order doctrine under Pa.R.A.P. 313.

¶ 9 In *McGourty*, the appellee's home was insured by the appellant. When appellee's home became damaged by fire and the parties were unable to agree on the amount of the loss, they proceeded under the appraisal clause of their insurance policy. Because the parties were unsuccessful in empanelling three appraisers, the trial court entered an order removing a previously selected panel and directing each party to select a new appraiser within ten days. It is from this order that the insurance company took its appeal.

¶ 10 In reaching the conclusion that the appeal should be quashed as interlocutory, the *McGourty* court noted the following similarities and distinctions between the arbitration and appraisal processes:

Both the appraisal and arbitration process are intended as alternatives in litigation whereby the parties submit the issues in dispute to an independent counsel for resolution. The only distinction between arbitration and appraisal is the scope of issues encompassed in each proceeding. As appraisal is limited to determining the amount of the loss with all other issues reserved for settlement by either negotiation or litigation, while arbitration considers all issues necessary for disposition of the entire controversy between the parties. *Ice City, Inc. v. Ins. Co. of North America*, 456 Pa. 210, 216 n. 12, 314 A.2d 236, 240 n. 12 (1974). For purposes of enforceability, there is no distinction between arbitration and appraisal. [citation omitted]

*McGourty*, 704 A.2d at 664. The court found "that an appraisal order is analogous to an arbitration order and ... review[ed] it accordingly." *Id.*

¶ 11 Similar to the determination in *McGourty* that an order vacating an appraisal award and directing further proceedings with a new appraisal panel is interlocutory, an order vacating an arbitration award and directing further proceedings such as a rehearing is considered interlocutory. *See Caron v. Reliance Ins. Co.*, 703 A.2d 63 (Pa.Super.1997). This analogy between the two types of orders is logical based upon the premise that "[f]or purposes of enforceability, there is no distinction between arbitration and appraisal." *Ice City, supra.* However, the Pennsylvania Arbitration Act states that an order vacating an arbitration award without directing a rehearing is considered final and appealable. *See* 42 Pa.C.S. § 7320(5).

¶ 12 Based upon the foregoing case law and statute, we find that the present order is final, and, therefore, appealable. While the order vacates the appraisal award, it fails to direct further proceedings (i.e., there is no directive that a new panel of appraisers be selected or that a new appraisal process be conducted).[3] *McGourty, supra.*

---

3. We do not find that Pa.R.A.P. 311(a)(1) (as amended on March 31, 1989) as applied in

¶ 13 Next, we note the trial court's scope of review in appraisal matters. Typically, the scope of an appraisal provision has been considered to be much more limited than a typical arbitration provision since the former provides only for resolution of issues of valuation, while, in contrast, the latter provides for resolution of an entire controversy between the parties. *Boulevard Associates v. The Seltzer Partnership*, 445 Pa.Super. 10, 664 A.2d 983 (1995), citing *Ice City, Inc. v. Insurance Co. of North America*, 456 Pa. 210, 216 n. 12, 314 A.2d 236, 240 n. 12. The *Boulevard* court looked to the rather limited scope of judicial review of common law arbitration to determine the proper scope of an appraisal proceeding. The court noted:

> In arbitration governed by common law principles, the arbitrators are the final judges of both law and fact and the award is not subject to judicial review for mistakes of either unless it is clearly shown that the party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. To prevail on these grounds, actual fraud must be shown ... Similarly, an 'irregularity' will not be found simply upon a showing that an incorrect result was reached. An irregularity which requires reversal of a common law arbitration award refers to the process employed in reaching the result of the arbitration, not to the result itself.

*Boulevard*, 664 A.2d at 987, citing *Gwin Engineers, Inc. v. Cricket Club Estates Development Group*, 382 Pa.Super. 533, 555 A.2d 1328, 1329 (1989) (citations omitted). In addition, arbitrators' authority is restricted to the powers the parties have granted them, and the trial court may examine whether the arbitrators exceeded the scope of their authority. *See Sley System Garages v. Transport Workers Union of America*, 406 Pa. 370, 178 A.2d 560 (1962); *Giant Markets v. Sigma Marketing Systems*, 313 Pa.Super. 115, 459 A.2d 765 (1983).

¶ 14 Specifically, the *Boulevard* court held that judicial review of appraisal is limited to fraud, misconduct, corruption or other irregularity causing an unjust result. *Boulevard, supra* at 987. The panel also determined that the reviewing court may examine the appraisers' scope of authority and whether they have exceeded it. The powers of the appraisers are determined by the submission assigned to them by the parties. Since appraisers do not have authority to decide matters not included in the submission, the trial court may review the scope of their authority. Assigning this review function to the trial court maintains the strict limitation on review but assures the parties that the appraisers have not gone beyond the submission assigned to them. *See Boulevard*, 664 A.2d at 987 ("Limited judicial review also imposes finality in a contested matter. To permit anything but limited judicial review defeats the purpose of appraisal as well as arbitration.").

¶ 15 In the present case the insurance policy's appraisal provision provides the scope of authority for the appraisers in fashioning the appraisal award. The provision, as stated *supra*, allows the parties' appraisers to set the amount of loss and then submit a written report of such agreement to Farmers. However, as in the instant situation, where the parties' appraisers cannot agree on an amount within a reasonable amount of time, the

---

Palermo Development Corp. v. Bowers, 388 Pa.Super. 49, 564 A.2d 996 (1989), controls the appealability of the instant order. Although the order from which the Rileys appeal also strikes the final judgment entered against Farmers, the court, in *Palermo* found interlocutory an order **opening a confessed judgment**. This case involves the appraisal process. Moreover, as will be discussed *infra*,

if we were to apply the rule strictly and ultimately quash the appeal as interlocutory, we would foreclose appellant's right to appeal, *see PNC Bank, Nat'l Ass'n v. Balsamo*, 430 Pa.Super. 360, 634 A.2d 645 (1993), and potentially compel the Rileys to bring suit under the insurance provision—a more costly and less efficient procedure.

parties are to submit their differences to a selected umpire. Thereafter, "[w]ritten agreement signed by any two of these three [the two appraisers and the umpire] **shall set the amount of the loss.**"

¶ 16 In their petition for confirmation of the appraisal award, the Rileys assert that the appraisers "were unable to agree on the amount of loss, and [they] accordingly **submitted the dispute to the umpire.**" It was at this point that the umpire set the amount of the loss at $8,650.00. The parties were notified of this amount and the Rileys' appraiser agreed to this amount by signing his name to the written notification.

¶ 17 In the record we can find no evidence that any procedure other than that outlined in the insurance provision was followed by the appraisers and/or the neutral umpire in fashioning the instant award. Farmers, in its rule to show cause filed after the confirmation of the appraisal award, stated that the appraisal award was not entered in accordance with the dictates of the parties' insurance policy. Specifically, Farmers contended that:

(1) The appraisers did not independently set the amount of the loss consistent with the Policy;

(2) The appraisers did not "submit their differences to the Umpire" consistent with the Policy;

(3) The Umpire failed and refused to respond to numerous requests to clarify the Appraisal Award;

(4) Without appropriate clarification, the Judgment entered on the Appraisal Award would force the Respondent to make payment contrary to and/or not in accordance with the Policy of Insurance in question[; and]

(5) The amount of the Award exceeds the highest possible amount of claimed damage covered under the policy and must include damages for non-covered damages outside the permissible scope of appraisal findings.

Despite the claims by Farmers of many shortcomings in the appraisal process, it has produced no evidence of record to sustain its burden in having the award vacated or modified.

■ ¶ 18 Moreover, we cannot read into the appraisal provision in the Farmers' policy a requirement that the umpire provide the parties with an itemization or breakdown of the procedure utilized to arrive at the amount of loss. By statute, all Commonwealth **fire** insurance policies must include an appraisal provision requiring appraisers to itemize the values and losses or damage to. an insured's items. *See* 40 P.S. § 636(2.); *see also Patriotic Order Sons of America Hall Association v. Hartford Fire Ins. Co.*, 305 Pa. 107, 111, 157 A. 259, 260 (1931) ("The appraisers shall then appraise the loss and damage, **stating separately sound value and loss or damage to each item**, and failing to agree shall submit their differences only to the umpire. An award in writing, **so itemized**, of any two, when filed with this company, shall determine the amount of sound value and loss or damage."); *Ice City*, *supra* at 212, 314 A.2d at 238 (where the parties' insurance appraisal provision stated that, "[a]n award in writing, **so itemized**, of any two [of the appraisers or an appraiser and umpire, if necessary] when filed with this Company shall determine the amount of actual cash value and loss."). However, the wording of insurance provisions covering losses other than fire, which are contained in a fire insurance policy, may be modified in conformity with the provisions in 40 P.S. § 636(2.) and may also accommodate additional property coverages and perils. *See* 40 P.S. § 636(4.). Accordingly, we recognize that the insurance policy issued by Farmers insured for losses other than fire, i.e., the snow and ice damage in the instant case; the provisions for these other types of coverage were permissibly modified as per section 636(4.).

¶ 19 Importantly, we find that in so modifying the standard appraisal provision in its policy of insurance, Farmers could no

longer expect an "itemized and detailed breakdown of the value and loss or damage to the [Rileys] property." Its modification changed the terms of the appraisal submission and, therefore, altered the matters that the umpire had to decide. The umpire followed the delineated procedures in the appraisal provision and notified the parties of his proposed calculation of loss. Moreover, Farmers had the opportunity to withdraw from the appraisal process prior to the amount of loss being set.

¶ 20 Finally, Farmers argues in its rule to show cause that it did not receive notice of the Rileys' petition to confirm the appraisal award and enter judgment on the award. As our courts have acknowledged, "[f]or purposes of enforceability, there is no distinction between arbitration and appraisal." *Ice City, supra.* It is clear to us that confirmation of an appraisal award goes directly towards the issue of its enforceability. Accordingly, we hold Farmers to the same standards as those to which we would hold a party opposing a common law arbitration award; we require that it file a petition to vacate or modify the set award prior to its confirmation in order to contest its propriety. Once thirty days has passed from the setting of the award, it was mandatory that the trial court confirm such award upon petition of either party. *See* 42 Pa.C.S. § 7342(b). Moreover, in the present appraisal context, the Famers' appraisal provision providing that "[w]ritten agreement signed by any two of these three **shall set the amount of the loss**" indicates that the parties have agreed to bind themselves to the result of the appraisal (albeit when conducted in accordance with the entire appraisal process). Accordingly, the court's entry of judgment on the set award was proper even without statutory authority providing for such procedure. Notice of the confirmation and subsequent judgment would not have changed the fact that entry of judgment upon the Rileys' petition was not only proper, but was also mandatory. *See Elkins & Co. v. Suplee,* 371 Pa.Super. 570, 538 A.2d 883 (1988) (where parties agreed to be bound by the result of the arbitration pursuant to their agreement, award could be entered as a judgment in any court of competent jurisdiction despite the lack of an enabling statute granting jurisdiction to do so).[4]

¶ 21 Accordingly, we find that the trial court exceeded its review powers by vacating the appraisal award in the instant case. Not only did it make such a decision after 30 days had elapsed following the setting of the award, *see* 42 Pa.C.S. § 7342(b), but it did so for reasons beyond its reviewing powers. The trial court, in reviewing an appraisal award, is limited to reviewing the appraisers' scope of authority. *Boulevard, supra.* We have uncovered no evidence that the umpire or the appraisers exceeded their scope of authority as granted in the insurance policy. Accordingly, we reverse the order of the trial court vacating the order confirming the appraisal award and direct that judgment be re-entered in favor of the Rileys. This decision upholds the important policy of limiting judicial review of appraisal awards, *see Sley System, supra,* and lends validity to the appraisal process which is a preferred means of dispute resolution in this Commonwealth.

¶ 22 Order vacating confirmed appraisal award and striking judgment is reversed. We remand for reinstatement of the appraisal award in favor of the Rileys and for reentry of judgment against Farmers. Jurisdiction relinquished.

---

4. We note that setting the amount of loss does not pass on the right of the Rileys' ultimate recovery. *See Patriotic, supra.*