J-A18033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MORAN INDUSTRIES, INC., AND JACK MORAN AND MAUREEN F. MORAN, | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | : : | |
| v. | : : | |
| ERIE INSURANCE EXCHANGE, | : : | |
| Appellant | : | No. 1835 MDA 2014 |

Appeal from the Order entered on October 6, 2014
in the Court of Common Pleas of Luzerne County,
Civil Division, No. 7738 of 2005

BEFORE:  FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED SEPTEMBER 29, 2015**

Erie Insurance Exchange ("Erie") appeals from the Order denying its

Petition to Modify or Vacate the Appraisal Award.  We reverse and remand.

Moran Industries, Inc., Jack Moran and Maureen F. Moran (collectively

"Moran") owned a three-story commercial building at 651-653 South Main

Street in Wilkes-Barre.  The building had two sides and an entry door on

each side.  On July 18, 2003, the interior floor on the 653 side of the

building collapsed because of rainwater infiltrating the building through

openings in the roof, which caused the framing to rot around the floor's

wooden joists.[1]  At the time of the collapse, the building was covered by an

insurance policy ("Policy") issued by Erie.  However, Erie declined coverage

---

[1] The 651 side of the building was intact and did not collapse.  Nevertheless, both the 651 and 653 sides of the building were torn down.

on the building based upon its belief that the damage was caused by long-term exposure to moisture entering through the roof, which constituted an ongoing condition.

Moran filed a declaratory judgment action against Erie, seeking a declaration that the losses sustained were covered by the Policy. Following a non-jury trial, the trial court concluded that the Policy covered the property damage and ordered Erie to pay Moran. Erie filed Post-Trial Motions, which were denied. This Court affirmed the trial court's determination. *See Moran Indus., Inc. v. Erie Ins. Exch.*, 37 A.3d 1229 (Pa. Super. 2011) (unpublished memorandum),[2] *appeal denied*, 44 A.3d 1162 (Pa. 2012).

Pursuant to the Policy, Erie demanded an appraisal to determine the amount of loss. Erie chose Gerald Williams ("Williams") as its appraiser and Moran chose Todd Ross ("Ross") as its appraiser. However, because the parties were unable to agree upon an umpire, the trial court entered an Order naming Mark Sobeck ("Sobeck") as the umpire. On June 17, 2013, Sobeck, joined by Williams, issued an appraisal award, which limited the determination of losses to the 653 South Main Street portion of the property, and found that the loss was $500,471.00.

---

[2] Relevant to this appeal, this Court referred to the property in question as a "building" at 651-653 South Main Street. *See Moran*, 37 A.3d 1229 (unpublished memorandum at 2).

Moran filed a Petition to Modify and/or Vacate Appraisal Award, arguing that Sobeck exceeded his scope of authority. Moran argued that Sobeck exceeded his power, as set forth in the Policy, to determine the amount of loss covered by the Policy. Moran also argued that Sobeck and Williams improperly made legal and factual determinations in establishing that the Policy only covered the portion of the building that collapsed rather than the entire building, where the Policy, the trial court, and this Court all stated that the "covered property" included only one building. Erie filed a Response, arguing that there was no limitation in the Policy as to how the appraiser/umpire could determine the amount of covered loss.

On October 17, 2013, the trial court granted Moran's Petition, vacated Sobeck's appraisal award, and appointed Thomas J. O'Connor ("O'Connor") as the new umpire. On May 28, 2014, O'Connor, joined by Ross, issued an appraisal award of $1,235,869.00 to Moran. Erie filed a Petition to Modify and/or Vacate O'Connor's appraisal award. The trial court denied Erie's Petition. Thereafter, Erie filed a Notice of Appeal.

On appeal, Erie raises the following questions for our review:

1.  Whether the trial court abused its discretion in vacating the appraisal award of [] Sobeck entered [on] June 17, 2013, made final by the Honorable Richard M. Hughes, III's, Order dated October 6, 2014, absent evidence of fraud, misconduct, corruption, irregularity causing an unjust result, or exceeding the umpire's scope of authority[?]

2.  Whether the trial court erred in concluding that the court had made a determination that the subject property had

- 3 -

> consisted of one building as opposed to two separate buildings[?]

Brief for Appellant at 5 (capitalization omitted).

Prior to addressing Erie's claims, we must determine, *sua sponte*, whether we have jurisdiction to consider this appeal. ***See Riley v. Farmers Fire Ins. Co.***, 735 A.2d 124, 130 (Pa. Super. 1999). It is well-settled that when a party opposes an appraisal, it must, within thirty days of the award, file a petition to vacate or modify to contest its propriety. ***See id***.; ***see also McGourty v. Pennsylvania Millers Mut. Ins. Co.***, 704 A.2d 663, 664 (Pa. Super. 1997) (stating that for purposes of enforceability, there is no distinction between a common law arbitration and appraisal). Once thirty days has passed from the issuance of an appraisal award, it is mandatory that the trial court confirm such award upon petition of either party, and enter judgement in conformity therewith. ***See Riley***, 735 A.2d at 130; ***see also K.H. v. J.R.***, 826 A.2d 863, 867 (Pa. 2003) (stating that the entry of a judgment on the docket is a requisite for an appealable order); ***Snyder v. Cress***, 791 A.2d 1198, 1200 (Pa. Super. 2002) (stating that thirty days after a common law arbitration award, 42 Pa.C.S.A. § 7342(b) provides that courts, upon petition of either party, enter a confirmation of the award and a "judgment or decree in conformity therewith.").

Here, following the issuance of O'Connor's appraisal award,[3] and the trial court's denial of Erie's Petition to Modify and/or Vacate O'Connor's appraisal, the trial court failed to confirm the award[4] or enter judgment in favor of Moran. *See Kemether v. Aetna Life & Cas. Co.*, 656 A.2d 125, 127 (Pa. Super. 1995) (stating that after the appellant's petition to vacate an award is denied, it is not appellant's obligation to file a petition to confirm the award denying them recovery, but is the trial court's obligation to enter an order confirming the award). Nevertheless, we may review an appeal in the absence of a properly entered judgment where the appealed order was clearly intended to be a final pronouncement in the case. *See Fanning v. Davne*, 795 A.2d 388, 391 (Pa. Super. 2002). Thus, because the Order denying Erie's Petition was the final pronouncement on the matter, in the interests of judicial economy, we will regard as done what ought to have been done and review the appeal. *See id*. at 392; *see also Snyder*, 791 A.2d at 1200-01 (addressing the merits of an appeal taken from the denial

---

[3] The trial court's initial Order vacating Sobeck's appraisal award and remanding for further proceedings was an interlocutory Order, and could not be appealed by Erie. *See McGourty*, 704 A.2d at 665 (stating that "an order vacating an appraisal award and directing further proceedings with a new appraisal panel is interlocutory and not appealable[.]") (footnote omitted).

[4] Moran filed a Petition to confirm the appraisal award within thirty days of the award. However, the trial court did not act on the Petition due to Erie's filing of the Petition to Modify and/or Vacate O'Connor's appraisal award. Moreover, the record does not indicate that Moran filed another petition to confirm following the trial court's denial of Erie's Petition to Modify and/or Vacate.

- 5 -

of a petition to modify and refusing to remand for the "ministerial act" of entering a confirming order).

In its first claim, Erie contends that the trial court abused its discretion in vacating Sobeck's appraisal award. Brief for Appellant at 8. Erie argues that contrary to the trial court's finding, Sobeck did not exceed the scope of his authority by concluding that the property at issue "was comprised of two separate buildings, as opposed to one covered structure." *Id*. Erie claims that pursuant to the Policy, the scope of the umpire's appraisal authority is solely to determine the amount of "loss." *Id*. at 9-10. Erie asserts that there was no restriction on what Sobeck could consider in determining the "loss," and thus, the parties were bound by the initial appraisal. *Id*. at 10, 12. Erie also argues that courts have a limited review of appraisal awards and that umpires are the final judge of both law and fact, and are afforded broad authority in rendering their decisions. *Id*. at 8-9, 10-13; *see also id*. at 11 (wherein Erie claims that in making a determination, the appraisers are given wide discretion in obtaining information and are free to determine which submissions by the parties are deemed credible). Erie additionally points out that the award could not be vacated because there was no evidence of fraud, corruption, or irregularity causing an unjust result. *Id*. at 8.

An "[a]ppraisal … is subject to limited judicial review." ***Boulevard Assocs. v. Seltzer P'ship***, 664 A.2d 983, 987 (Pa. Super. 1995); ***see also***

*id*. (noting that "the scope of an appraisal provision was much more limited than the typical arbitration provision since the former provided only for resolution of issues of valuation and the latter provided for resolution of an entire controversy between the parties.").

> [J]udicial review of appraisal is limited to fraud, misconduct, corruption or other irregularity causing an unjust result. … [T]he reviewing court may examine the appraisers' scope of authority and whether they have exceeded it. The powers of the appraisers are determined by the submission assigned to them by the parties. Since appraisers do not have authority to decide matters not included in the submission, the trial court may review the scope of their authority. Assigning this review function to the trial court maintains the strict limitation on review but assures the parties that the appraisers have not gone beyond the submission assigned to them.

*Id*. (citation omitted); *accord Riley*, 735 A.2d at 128. Unless restricted by the submitted agreement, the appraisers are the final judges of both law and fact. *Boulevard Assocs.*, 664 A.2d at 988.

Pursuant to the Policy, the appraisal clause states, in relevant part, the following:

> 2. Appraisal
>
> If you and we fail to agree on the amount of "loss," either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days after both appraisers have been identified, you or we can ask a judge of a court of record in the state where your principal office is located to select an umpire.
>
> The appraisers shall then set the amount of "loss." If the appraisers submit a written report of an agreement to us, the

amount agreed upon shall be the amount of "loss."   If they cannot agree, they will submit the differences to the umpire.   A written award by two will determine the amount of loss."   …

Policy, Section X, at 15-16.   The Policy defines "Loss" as the "direct and accidental loss of or damage to covered property."   *Id*., Section XI, at 18.

Here, the matter was submitted to Sobeck, who issued an appraisal award, which stated the following, in relevant part:

1. The buildings were constructed at two different times, had two separate deeds, but were listed on the insurance policy as one building/property.

2. Building number 653 collapsed and 651 did not.

3. The policy covers only the portion of the building that collapsed, but [Moran] claims that the #651 building had to be torn down at the same time as the #653 building, since they were connected.   The policy states that[] "a part of a building that is standing is not considered to be in a state of collapse, even if it has separated from another part of the building."

4. Queen Engineering stated that #651 was not unsafe and was intact at the time of their inspection.   In an email … dated April 23, 2013, Michael H. Queen, PE stated "On the day of our inspection access to the interior of the first and second floor levels of the 653 address was available by way of the structure at the 651 address.   The 651 address was not a subject of our inspection.   There were no concerns with damage or our safety while within the 651 address ….   [Moran] have not provided any engineering reports stating that 651 had to be torn down at the same time as 653.

Opinion/Appraisal, 6/17/13, at 1-2 (emphasis omitted).

Sobeck noted that while the parties agreed that the total area of the interior of 651-653 was 8,300 square feet, the appraisers were limited to proposing the loss to only the 653 (collapsed) side of the building.   *Id*. at 3;

*see also* Trial Court Opinion, 1/28/15, at 5 (unnumbered) (stating that Sobeck "limited each party's appraiser's proposed determination of the loss to the 653 portion of the property only."). Erie's appraiser, Williams, proposed a loss of $120 per square foot, totaling $996,000.00 for the entire property and $498,000.00 for the 653 side of the building. Opinion/Appraisal, 6/17/13, at 3. Moran's appraiser, Ross, stated that the 653 side of the building had a loss of $513,942.00 based upon the value of the building in 2006 ($487,000.00), a 5% escalation in costs for construction projects per year during that time period, and a 25% depreciation. *Id*. Sobeck found the two appraisals to be close and determined the loss to be the average of the two appraisals. *Id*. Sobeck stated the loss was $500,471.[5] *Id*. Erie's appraiser, Williams, joined the finding.

Here, the scope of the authority granted by the appraisal provision to the appraisers was the task of determining the amount of loss or damage to the covered property. *See* Policy, Section X, at 15-16; *see also id*., Section XI, at 18 (wherein the policy defines loss, in part, as the damage to the "covered property"). The appraisal clause contained in the Policy does not restrict the appraisers' methodology, including utilizing the Policy's coverage provisions, in determining the loss or preserving the right of either party to seek review of the factual findings of the umpire. Thus, in the

---

[5] We note that Sobeck incorrectly averaged the two appraisals. An average of the parties' appraisals would be $505,971. It appears Sobeck averaged Moran's stated value of the building in 2006, $487,000, with its appraisal of the loss, $513,942.

- 9 -

course of ascertaining the loss under the Policy, the appraisers and umpire could make a variety of factual and legal determinations in the course of setting a value for the damages to the covered property. ***See Boulevard Assocs.***, 664 A.2d at 988 (stating that unless restricted by the agreement, appraisers are the final judges of law and fact, and have the authority to decide all matters necessary, including what assessment method to use, in setting the value of the property).

Accordingly, when Sobeck and Williams decided that the most appropriate way of determining the loss of the covered property was to find that the collapse (damage) was confined to the 653 side of the building, and the 651 side of the building was still standing, they clearly were not exceeding their scope of authority. ***See id***. (stating that the appraisers were acting within their authority in determining the valuation method as it was "exactly the type of decision that the parties had asked them to make and by which the parties agreed to be bound."). Further, contrary to Moran's argument that Sobeck was bound to find that loss could only applied to one building as a whole, Sobeck was free to make legal and factual determinations in setting forth the loss of the property, and the appraisal cannot be vacated or modified based upon these grounds. ***See id***. (stating that unless restricted by the agreement, appraisers are the final judges of both law and fact, "and an award will not be reviewed or set aside for mistake in either.") (citation omitted). Because there is no other ground

alleged for refusing to enforce Sobeck's computation of loss, we conclude that Sobeck's appraisal award is binding. ***See id***. (stating that the appraisers did not exceed their scope of authority in utilizing a valuation method wherein they considered the actual future use of the property, as the agreement did not restrict the appraisers' ability to make a variety of decisions to set a value for the property); ***see also Riley***, 735 A.2d at 129 (stating that the appraisers acted within the authority outlined in the insurance policy in determining the amount of loss).

Based upon the foregoing, we conclude that the trial court exceeded its review powers by vacating Sobeck's appraisal award. Accordingly, we reverse the Order of the trial court, and direct that judgment be entered in favor of Moran in the amount of $500,471.00.[6] ***See Riley***, 735 A.2d at 130 (concluding that the trial court exceeded its review powers in determining that the appraisers and umpire violated their scope of authority, and that judgment must be re-entered in favor of the appellants); ***see also***

---

[6] As noted above, despite Sobeck's apparent mistake in calculating the loss, we cannot vacate or modify an appraisal award based on a mistake. ***See Boulevard Assocs.***, 664 A.2d at 988; ***see also Patriotic Order Sons of America Hall Assoc. v. Hartford Fire Insur. Co.***, 157 A. 259, 261 (Pa. 1931) (stating that "[a]n honest mistake of judgment in the conclusion of arbitrators which does not exceed the bounds of the submission is not, as a general rule, ground of impeachment of the award, whether the alleged mistake is one of fact or of law, or of both. … Such errors are among the contingencies which parties assume when they select such tribunals.").

***Boulevard Assocs***., 664 A.2d at 988.[7]

Order reversed. Case remanded for entry of judgment in favor of Moran in the amount of $500,471.00. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2015

---

[7] Based upon our grant of relief on Erie's first claim, we need not address its second claim on appeal.