J-A29010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LUCILLE BELLEZA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIE INSURANCE | : | No. 668 WDA 2021 |

Appeal from the Judgment Entered September 13, 2021
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  17-CI-05670

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: MARCH 9, 2022**

Appellant, Lucille Belleza, appeals from the September 13, 2021 judgment that confirmed an umpire's appraisal award but denied her pre-judgment interest on that award.[1]  After careful review, we affirm.

The trial court summarized the facts and procedural history of this matter as follows:

> [Ms. Belleza] initiated this action by filing a Complaint in civil action against [Appellee, Erie Insurance ("Erie"),] on or about November 27, 2017….  In her Complaint, [Ms. Belleza] avers that she is the owner of real property situate[d] at 5 Hutson Street, Monessen, Pennsylvania in Westmoreland County[ (referred to herein as "Subject Property"),] and that [Erie] is a Pennsylvania corporation with a corporate field office located at 1000 Murray

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] As we discuss further *infra*, Ms. Belleza improperly appealed from the trial court's May 7, 2021 order denying her motion for reconsideration; instead, she should have appealed from the judgment entered on September 13, 2021. We have amended the caption accordingly.

Ridge Lane, Murrysville, PA 15668. [Ms. Belleza] brought the instant action, alleging the aforementioned property was insured by Erie, when, on November 27, 2016, the "Subject Property suffered significant water damage to the floors, walls, doors and additional areas of the Subject Property, which was caused by a malfunctioning water heater or, in the alternative, by another covered loss, such as the roof, which was sudden and accidental" and sought damages under theories of breach of contract and insurance bad faith regarding [Erie's] coverage of [Ms. Belleza's] claim. [Erie] filed an Answer and New Matter to the Complaint on or about February 12, 2018. [Ms. Belleza] did not file a Reply to New Matter.

Significant to the instant matter, the parties decided to remove the instant matter from litigation and pursue alternative dispute resolution alternatives. After failing to resolve the matter through the appraisers, both parties aver that the matter was submitted to Umpire, Harry M. Paras, Esq., who issued a final award on August 18, 2020. The award by Umpire Paras stated, "AND NOW, to with (*sic*), this 18th day of August, 2020, following considerable deliberations, the Umpire through the appraisal process has concluded that the Replacement Cost Value (RCV) of the Belleza house is in the amount of $248,000.00[,] and the Actual Cash Value (ACV = Replacement Cost minus Depreciation) is in the amount of $210,000.00."

On or about February 26, 2021, [Erie] filed a Motion to Enforce Settlement....[2] On March 1, 2021, [Ms. Belleza] filed an Omnibus Motion for Confirmation of Final Award, Entry of Judgment on Docket and Pre-Judgment Interest. This [c]ourt heard the matter in motions court and granted [Ms. Belleza's] request to confirm the final award, dated August 18, 2020, but denied [her]

_____

[2] In its motion to enforce settlement, Erie asserted that it made payment on the umpire's final award to Ms. Belleza's counsel on or before August 28, 2020, and therefore requested that Ms. Belleza "settle and discontinue the instant litigation as the terms of the settlement agreement between the parties ha[ve] been met upon payment of the appraisal award." Erie's Motion to Enforce Settlement, 2/26/21, at ¶ 28; *see also id.* at ¶ 27.

remaining requests, which included a request for pre-judgment interest.[3, 4] …

On or about March [3]0, 2021, [Ms. Belleza] filed a Motion for Reconsideration[, specifically asking for the court to award her pre-judgment interest,] and the motion was heard by the undersigned in Motions Court on May 7, 2021. The [c]ourt denied the Motion for Reconsideration [on May 7, 2021]. [Ms. Belleza] filed a Notice of Appeal on or about June 3, 2021[,] to the Pennsylvania Superior Court[, purporting to appeal from the trial court's order denying her motion for reconsideration]. On June 25, 2021, this [c]ourt issued an [o]rder … in accordance with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing [Ms.] Belleza to file a concise statement of matters complained of in her appeal to the Superior Court. [Ms. Belleza] timely filed a concise statement of matters complained of on appeal on or about July 16, 2021.

Trial Court Opinion ("TCO"), 8/3/21, at 2-4 (footnotes omitted).

The trial court filed its Rule 1925(a) opinion on August 3, 2021. On August 12, 2021, this Court issued a rule to show cause as to why Ms. Belleza's appeal should not be quashed, given that she purported to appeal from an order denying her request for reconsideration of an earlier ruling. ***See Valentine v. Wroten***, 580 A.2d 757, 758 (Pa. Super. 1990) ("Our [C]ourt has repeatedly held that appeals filed from orders denying reconsideration are improper and untimely."). Ms. Belleza filed a timely response, averring, *inter alia*, that her appeal should not be quashed because the docket shows that the prothonotary had not entered judgment below. On August 30, 2021, this

---

[3] While the trial court did not explicitly rule on Erie's motion to enforce settlement, it effectively granted Erie the relief it sought by confirming the final award of the umpire and denying Ms. Belleza's other requests for relief, such as pre-judgment interest.

[4] Judgment was not entered on the docket at this time.

Court entered another order, discharging the rule to show cause and permitting the appeal to proceed. However, therein, we advised Ms. Belleza that the panel assigned to review her case may revisit this issue. Further, we directed her to praecipe the trial court prothonotary to enter judgment on the decision of the trial court. Ms. Belleza thereafter filed a response, indicating that judgment was entered on September 13, 2021.

Presently, Ms. Belleza raises the following issues for our review, which we set forth *verbatim*:

> I. Whether Appellee is entitled to pre-judgment interest from an Umpire approved award on a contract akin to common law arbitration in the amount of $49,246.88Whether Appellant is entitled to pre-judgment interest from an Umpire approved award on a contract akin to common law arbitration in the amount of $49,246.68.

> II. Whether the Court erred in denying Plaintiff's Motion for Reconsideration of its denial of awarding prejudgment interest from an Umpire approved award on a contract akin to common law arbitration in the amount of $49,246.68Whether the Court erred in denying Plaintiff's Motion for Reconsideration of its denial of awarding prejudgement interest from an Umpire approved award on a contract akin to common law arbitration in the amount of $49,246.68.

> III. By Order dated August 30, 2021, the Superior Court discharged the Rule to Show Cause directed the appeappeal to proceed and advised that the issue may be revisited and that the parties should address the issue in there briefs at the time of oral argument.

> I. Whether Appellant is entitled to pre-judgment interest from an Umpire approved award on a contract akin to common law arbitration in the amount of $49,246.68.

> II. Whether the Court erred in denying Plaintiff's Motion for Reconsideration of its denial of awarding prejudgement interest

- 4 -

from an Umpire approved award on a contract akin to common law arbitration in the amount of $49,246.68.

III. This case arose in the court of Common Pleas of Westmoreland County where Appellant sustained extensive damage to her property covered under a policy written by Erie Insurance. Erie Insurance partially denied the claim and the parties submitted the causes of action to an Umpire. The Umpire gave an award to Appellant; however, the issue of pre-judgment interest on the award was not addressed by the Umpire.

Ms. Belleza's Brief at 4-6.

Before delving into the merits of Ms. Belleza's issues, we initially address the propriety of her appeal. "[T]he appealability of an order is a question of jurisdiction and may be raised *sua sponte*." **Riley v. Farmers Fire Ins. Co.**, 735 A.2d 124, 127 (Pa. Super. 1999) (citation omitted).

With respect to the appraisal process used by Ms. Belleza and Erie, this Court has explained that:

Both the appraisal and arbitration process are intended as alternatives to litigation whereby the parties submit the issues in dispute to an independent counsel for resolution. The only distinction between arbitration and appraisal is the scope of issues encompassed in each proceeding. An appraisal is limited to determining the amount of the loss with all other issues reserved for settlement by either negotiation or litigation, while arbitration considers all issues necessary for disposition of the entire controversy between the parties. For purposes of enforceability, there is no distinction between arbitration and appraisal. We find that an appraisal order is analogous to an arbitration order and will review it accordingly.

**McGourty v. Pa. Millers Mut. Ins. Co.**, 704 A.2d 663, 664 (Pa. Super. 1997) (internal citations omitted).

This Court has determined that the "confirmation of an appraisal award goes directly towards the issue of its enforceability[,]" and therefore we apply

the same standards that govern confirming common law arbitration awards — specifically, 42 Pa.C.S. § 7342(b) — to appraisal awards. *See Riley*, 735 A.2d at 130. In relevant part, Section 7342(b) provides:

> **(b) Confirmation and judgment.--**On application of a party made more than 30 days after an award is made by an arbitrator under section 7341 (relating to common law arbitration), the court shall enter an order confirming the award and ***shall enter a judgment or decree in conformity with the order.***

42 Pa.C.S. § 7342(b) (emphasis added). *See also Snyder v. Cress*, 791 A.2d 1198, 1200-01 (Pa. Super. 2002) (reviewing the merits of an appeal from a common law arbitration award where judgment had been entered below).

Here, the trial court's order confirming the award and denying Ms. Belleza pre-judgment interest was reduced to judgment on September 13, 2021, in accordance with Section 7342(b). Thus, we will overlook that Ms. Belleza has purported to appeal from the trial court's order denying her motion for reconsideration, and we will treat Ms. Belleza's June 3, 2021 notice of appeal as being filed after the entry of judgment. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); *Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 514-15 (Pa. Super. 1995) (stating that appellate

- 6 -

courts may "regard as done that which ought to have been done") (citations omitted).[5] As such, we proceed to the merits of Ms. Belleza's appeal.

Ms. Belleza argues that she is entitled to pre-judgment interest on the umpire's award in the amount of $49,246.68. ***See*** Ms. Belleza's Brief at 12-13. She advances that, "[u]nder Pennsylvania law, 'even where a party's right to the payment of interest is not specifically addressed by the terms of a contract, a non-breaching party to a contract may recover, as damages, interest on the amount due under the contract.'" ***Id.*** at 14 (quoting ***TruServ***

---

[5] In light of prior decisions issued by this Court, we are not persuaded by Erie's argument that Ms. Belleza's appeal is untimely because the trial court's March 12, 2021 order was made final and appealable by 42 Pa.C.S. § 7320 (or, alternatively, 42 Pa.C.S. § 7321.29). ***See*** Erie's Brief at 24-27; ***see also*** 42 Pa.C.S. § 7342(a) (generally adopting Section 7321.29 (relating to appeals for revised statutory arbitration), or if before July 1, 2019, Section 7320 (relating to appeals for statutory arbitration)); 42 Pa.C.S. § 7320 (providing, *inter alia*, that an appeal may be taken from a court order confirming an award and that "[t]he appeal shall be taken in the manner, within the time and to the same extent as an appeal from a final order of court in a civil action"); 42 Pa.C.S. § 7321.29 (stating, *inter alia*, that an appeal may be taken from an order confirming an award and that "[a]n appeal under this section must be taken as from an order or a judgment in a civil action and must be taken within 30 days of the order or judgment"); Pa.R.A.P. 311(a)(8) (stating that an appeal may be taken as of right from "[a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties"). This Court has previously explained that any adoption of Section 7320 made in Section 7342(a) "must be read in conjunction with the common law arbitration provision of [Section] 7342(b) which allows (after 30 days following the award) for the entry of a confirmation of the award and ***the entry of a judgment or decree in conformity therewith***." ***Snyder***, 791 A.2d at 1200 (emphasis added). Accordingly, we do not agree with Erie that, pursuant to Section 7320 (or Section 7321.29), Ms. Belleza had to appeal within 30 days from the trial court's March 12, 2021 order, as judgment had not yet been entered on the docket pursuant to Section 7342(b).

***Corp. v. Morgan's Tool & Supply Co., Inc.***, 39 A.3d 253, 263 (Pa. 2012)).

She also points to Section 354 of the Restatement (Second) of Contracts,

which she says provides, in relevant part, that:

> If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

***Id.*** (quoting Restatement (Second) of Contracts § 354). Ms. Belleza claims

that Erie breached the terms of the insurance contract when it partially denied

coverage on her claim on April 28, 2017, and therefore, she says interest

began to accrue on April 28, 2017, and continued accruing through August

18, 2020. ***Id.*** Finally, she avers that "she has not waived her right to pre-

judgment interest on the award and believes that she is still entitled to pre-

judgment interest on the award." ***Id.*** at 18.

Ms. Belleza is not entitled to pre-judgment interest. As the trial court

aptly explained:

> [Erie] filed a Motion to Enforce Settlement on or about February 26, 2021, which was considered by the [c]ourt on March 12, 2021. Significant to the instant matter, as averred in the Motion to Enforce Settlement, on August 27, 2018, counsel for [Erie] sent counsel for [Ms. Belleza] correspondence regarding the parties['] submitting the matter to appraisal for a determination on the amount of loss to the subject property to resolve [Ms. Belleza's] claims. The letter provided as follows:
>
> > As you know, we have been discussing possible alternative dispute resolution alternatives to resolve the above[-]captioned matter for some time. Last week, we discussed the parties['] submitting this matter to appraisal for a determination on the amount of loss to the subject property

- 8 -

***to fully resolve your client's claims***. You indicated you would recommend appraisal to your client.

This matter is in litigation, and there is a dispute as to whether all of the damage to the property is covered under the Erie policy. However, as part of the agreement to move through the appraisal process and ***to resolve all the claims asserted in the lawsuit pending lawsuit (sic) in the Court of Common Pleas of Westmoreland County at No. 17-CI-05670***, Erie would waive its right to assert the mold limit under the Policy. To do so, ***we need to confirm that going through this process will resolve all of your client's claims***, including and (*sic*) agreement that those claims set forth in the Complaint at Count II and any damages thereunder are not being sought in the appraisal, and upon an agreement between the appraisers (or an appraiser and umpire) on the amount of loss, and payment thereon, ***your client will settle and discontinue the pending lawsuit in the Court of Common Pleas of Westmoreland County at No. 17-CI-05670.***

The appraisers selected by the parties shall estimate and appraise the loss of and to the property at 5 Huston Street, Monesson (*sic*) Pennsylvania pursuant to the terms of the Erie Insurance policy. Each appraiser shall be paid by the parties selecting him or her and the expenses of the appraisal and the services of the umpire shall be paid by the parties equally.

The amount to be determined in this appraisal is the amount or amounts that would otherwise be paid under the policy of insurance in question if there were no issues regarding coverage.

Should you have any questions or concerns regarding this matter, please do not hesitate to contact me at your convenience.

Counsel for [Erie] attached counsel for [Ms. Belleza's] responses by email, which indicated that ***"I will secure the formal acceptance from my client on this shortly"*** and ***"[w]e are in agreement, provided that we are dealing with the present condition of the property."*** As noted above, after the matter failed to resolve through appraisal, the matter was submitted to Umpire Harry Paras, Esq., who issued a final award on August 18, 2020.

[Erie's] counsel thereafter sent an email to [Ms. Belleza's] counsel on or about August 24, 2020, advising that a settlement check was being issued pursuant to Umpire Paras'[s] final award and requesting that the instant matter be discontinued pursuant to the agreement between the parties to engage in appraisal.

[Ms. Belleza's] counsel responded:

Please direct [the settlement check] to my attention[,] payable to my firm. However, the payment of the award is not sufficient to resolve the matter completely, as we maintain additional claims including for bad faith during the appraisal process. We only agreed to waive it for the claims process, but the ongoing delay and interference caused my client additional expenses and losses, including delay damages/interest, appraiser expenses and additional legal fees at a minimum. Let me know where your client stands.

On or about August 28, 2020, counsel for [Erie] enclosed the check in a letter [to Ms. Belleza's] counsel, which provided, as follows:

Enclosed please find Erie's ACV payment based on the appraisal award in this matter[. T]he total payment is $189,345.58, and has been issued based on the below calculation…[.]

It is our understanding that the property has been sold and the mortgage thereon has been satisfied.

In addition, I am enclosing my letter of August 27, 2018[,] regarding the terms we agreed to in submitting this matter to appraisal to settle the claims against Erie. We agreed to move through the appraisal process to resolve all the claims asserted in the lawsuit pending lawsuit (*sic*) in the Court of Common Pleas of Westmoreland County at No. 17-CI-05670, with Erie agreeing to waive its right to assert the mold limit under the Policy.

Further[,] we agreed that upon an agreement between the appraisers (or an appraiser and umpire) on the amount of the loss, and payment thereon, your client will settle and discontinue the pending lawsuit in the Court of Common Pleas of Westmoreland County at No. 17-CI-05670. Based on this agreement, we believe that with this payment your client should settle and discontinue this pending lawsuit.

Counsel for [Ms. Belleza] responded, indicating, "I am in receipt of your letter, and remain in disagreement of [*sic*] of your position. [W]e waived claims processing bad faith and you waived mold. Then, AFTER that agreement, your client proceeded to interfere with the process ultimately resulting in the need to go to an umpire and cost my client more $ for appraiser fees and additional delay. Nevertheless, the award should still be subject to pre-judgment interest regardless."

\*\*\*

[Ms. Belleza] avers that she has not waived her right to pre-judgment interest on the award and believes that she is still entitled to pre-judgment interest on the award. In support of her position, [Ms. Belleza] cites to Section 354 of the Restatement (Second) of Contracts….

Counsel for [Erie], in its Motion to Enforce Settlement, avers that it seeks to hold [Ms. Belleza] to the original settlement agreement, as consented to by both parties, and settle and discontinue the instant litigation as the terms of the settlement agreement between the parties have been met upon payment of the appraisal award.

In support of its position, [Erie] avers that "[a] settlement agreement is enforceable so long as it meets the prerequisites for a valid contract regardless of whether it is in writing or oral," and that "[o]nce there is an agreement as to all of the essential terms of the settlement with a mutual intent to be bound by such, … a settlement is formed and is enforceable."

The [c]ourt found [Erie's] argument persuasive. In the instant matter, there was correspondence between the parties indicating that the alternative proceedings through the umpire would "resolve all of your client's [Ms. Belleza's] claims" and "upon an agreement between the appraisers (or an appraiser and an umpire) on the amount of loss and payment thereon, your client [Ms. Belleza] will settle and discontinue the pending lawsuit in the Court of Common Pleas of Westmoreland County at No. 17-CI-05670." In point of fact, the umpire issued his award, [Erie] issued to [Ms. Belleza] a check in the amount of the award, and it devolved upon [Ms. Belleza] to carry out the final term, to wit, the settlement and discontinuance of the instant lawsuit. The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. ***Compu Forms Control Inc. v. Altus Group Inc.***, 574 A.2d 618, 624 (Pa. Super. 1990).

> There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. If courts were called on to re-evaluate settlement agreements, the judicial policies favoring settlements would be deemed useless.

*Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 518 (Pa. Super. 2009).

> If [Ms. Belleza] intended to assert a claim for pre-judgment interest, that claim had to be asserted prior to the matter being decided by the umpire or excepted from the terms of the agreement….

TCO at 5-10 (footnotes and some internal citations omitted; some brackets and emphasis added; capitalization in original).

We agree with the trial court's analysis. "Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement." *Mastroni-Mucker*, 976 A.2d at 518 (citation omitted). As the trial court observed, by submitting the matter to appraisal and avoiding continued litigation, Erie agreed to waive its right to assert the mold limit under the policy, and Ms. Belleza agreed that the appraisal would fully resolve her claims and that she would settle and discontinue the pending lawsuit. Ms. Belleza did not mention pre-judgment interest at any point during the parties' negotiations to submit the matter to appraisal. She must be held to the original settlement agreement consented to by the parties, which did not contemplate Ms. Belleza's receiving an award of pre-judgment interest. Thus, the trial court did not err in denying her request for pre-judgment interest.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2022