664 A.2d 983

BOULEVARD ASSOCIATES, Appellant,

v.

The **SELTZER PARTNERSHIP**, a Pennsylvania General Partnership, Isabelle Seltzer Fleck, Doris S. Barrow and Walter L. Bartholomew, in His Capacity as Trustee for the Trust of Mary E. McWilliams.

BOULEVARD ASSOCIATES

v.

The **SELTZER PARTNERSHIP**, Isabelle Seltzer Fleck, Doris S. Barrow and Walter L. Bartholomew, Jr., in His Capacity as Trustee for the Trust of Mary E. McWilliams, Appellants.

Superior Court of Pennsylvania.

Argued Jan. 12, 1995.

Filed Aug. 4, 1995.

Reargument Denied Oct. 11, 1995.

William R. Thompson, Philadelphia, for Boulevard Associates.

Leonard A. Busby, Philadelphia, for the Seltzer Partnership.

Before BECK, KELLY and HOFFMAN, JJ.

BECK, Judge:

In this appeal from a declaratory judgment we address inter alia the scope of the trial court's review of an appraisal conducted pursuant to a lease agreement. More specifically we examine whether judicial review may include an examination of the appraiser's scope of authority. We find that it may. We affirm the trial court.

The lease agreement was executed in March of 1965. Under its terms, the predecessor of appellant Boulevard leased a parcel of land located at 10 Presidential Boulevard in Bala Cynwyd, Pennsylvania from appellee The Seltzer Partnership (Seltzer).[1] As defined in the lease, the leased premises consisted of the land "together with all easements, rights and privileges thereto belonging or in any way appertaining...." Article 4 of the lease required Boulevard to erect an office building on the land. The building, which was completed early in the initial term of the lease, belonged to Boulevard while the land belonged to Seltzer.

The lease also granted Boulevard the option to purchase the leased premises, providing as follows:

LANDLORD hereby grants to TENANT an irrevocable option to purchase the leased premises exclusive of building and improvements which are the Property of the TENANT, for the price of Three Dollars and Thirty–Five Cents ($3.35) per square foot or the then fair market value of the land (exclusive of the buildings and improvements which are the Property of the TENANT) to be determined by appraisal (the appraisers assuming for the purpose of determining

1. Boulevard purchased the interest of its predecessor in the Lease and obtained an assignment of rights thereunder in 1985.

fair market value that the land is not subject to this lease) whichever is higher.

In March 1991 Boulevard exercised its option to purchase the property. The lease provided that the lease term would expire on September 7, 1991. Prior to the expiration of the term, Seltzer and Boulevard tried unsuccessfully to arrive at a consensual fair market value of the leased premises. Once the term of the lease expired, Boulevard continued to occupy the leased premises but discontinued its rental payments.

By early 1992, the parties having realized that no agreement on fair market value would be reached, the appraisal process was commenced. The lease provision governing the appraisal process states:

*Appraisals:* Wherever in this lease appraisals may be required to determine the then fair market value of the land exclusive of buildings and improvements, if the parties hereto are unable to agree as to the then fair market value, either party may initiate an appraisement proceeding by giving the other party fifteen (15) days written notice of its or her desire for an appraisement.... The two qualified real estate appraisers thus selected [by the parties to the Lease] shall, within thirty (30) days after their appointment: (1) agree on the then fair market value and so report to the parties in writing and such value shall be binding upon all concerned; or (2) if they cannot agree on such value within such thirty (30) day period, they shall designate in writing a third qualified real estate appraiser.

The three appraisers thus selected shall proceed promptly with an appraisement, giving the parties an opportunity to be heard. The fair market value, as determined by a majority of such appraisers, shall be binding upon all concerned.

Ultimately three appraisers were appointed to value the leased premises. After having given the parties an opportunity to be heard, the appraisers unanimously agreed to a fair market value of $1 million. In arriving at this value, the appraisers considered zoning restrictions pertinent to the use

of the leased premises. Specifically they considered the fact that Lower Merion Township, where the leased premises are located, had recently enacted a new zoning ordinance that severely restricted the size of any building that could be constructed on land such as the leased premises. Boulevard's building far exceeded the new size limitations and, therefore, had become a nonconforming use. However, another provision of the Lower Merion Zoning Code permitted the present building to remain on the land and also provided that if the building was destroyed or damaged by fire or other cause, it could be reconstructed at its exact former size. Based on this information, the appraisers arrived at a valuation that included consideration of the fact that this particular piece of property could in future support a building as large as the one presently on it.

Boulevard objected to the $1 million valuation, contending that the appraisers had exceeded the authority under the lease; that they erred in considering the size of the building the land could support. Rather, Boulevard contended that the appraisers should have valued the land as if it were vacant and thus subject to the new zoning restrictions on the size of any building that could be constructed on it in future. Boulevard based this contention on the fact that the lease directed the appraisers to value only the land, exclusive of the buildings and improvements presently located there. Boulevard argued that it was not bound by the appraisal since the appraisers exceeded the authority assigned to them in the lease and wrongfully included consideration of the existence of the present building and the new zoning restrictions when appraising the land.

Seltzer accepted the appraisal and proceeded to schedule a closing on the sale within the time period provided by the lease. When the closing on the sale of the building was imminent, Boulevard instituted this action for a preliminary injunction preventing the closing and for a declaratory judgment that the appraisers' valuation was flawed and therefore not binding. Seltzer counterclaimed for payment of rent and attorneys' fees. After initial proceedings resulting in a denial

of the preliminary injunction, the closing was conducted on October 5, 1992. Boulevard paid the appraised price but reserved its right to pursue its pending action.

Thereafter the trial court entered an Adjudication and Decree Nisi denying relief to Boulevard and awarding a portion of the rent claimed by Seltzer. The court's reasoning in support of accepting the appraisers' valuation was as follows:

> Initially, it should be noted that the fair market value of the land was determined by a binding appraisal process as set forth in the Lease Agreement. The value of the land was unanimously agreed to by all three appraisers including Boulevard's appointed appraiser. The Lease Agreement states specifically that the appraised value "shall be binding upon all concerned." There has been no evidence presented to the Court to suggest that the appraisers acted in an illegal, fraudulent or criminal manner. The appraisers [sic] determination is given the same degree of finality as an award under common law arbitration. Accordingly, Boulevard is bound [by] ... the appraiser's determination.
>
> Furthermore, the appraisers [sic] conclusion was also legally correct. The benefit of this nonconforming use runs with the land. Accordingly, the appraisers correctly valued the land with the inclusion of the nonconforming use.

Trial Court Opinion at p. 11. The foregoing language indicates that the trial court utilized a standard of review that limited its inquiry to whether the appraisers acted in an "illegal, fraudulent or criminal manner." However, the court noted that the appraisers had not in fact made any substantive error in valuing the subject property.

After denying post-trial motions, the trial court entered an order directing that the Adjudication and Decree Nisi be made final. Boulevard timely appealed and Seltzer cross appealed.

Boulevard raises the following issues on appeal:

1. Whether a court of law is permitted to determine whether appraisers appointed to value land under a contract

of submission acted within the authority conveyed to them by the contract.

2.  Whether the appraisers appointed under the lease agreement between Boulevard and the Seltzer Partnership exceeded the authority conveyed to them.

3.  Whether the court erred as a matter of law in determining that the appraisers' decision was legally correct and binding upon appellant.

4.  Whether the court erred in awarding rent to Seltzer.

In the cross-appeal Seltzer challenges the amount of rent awarded by the trial court for the period during which Boulevard held over as a tenant and contends that the trial court erred in denying Seltzer attorneys' fees.

Initially we must determine the trial court's proper scope of judicial review of an appraisal conducted pursuant to a private agreement. Both parties analogize this situation to an private agreement providing for common law arbitration and cite case law wherein a similar analogy has been drawn. *See, e.g., Ice City, Inc. v. Insur. Co. of North America,* 456 Pa. 210, 314 A.2d 236 (1974). Boulevard argues that in both appraisal and general arbitration, a court may always inquire into whether the appraisers or arbitrators exceeded the scope of authority granted to them in the parties' agreement. Seltzer counters that the only question that may be decided by the reviewing court is whether the appraisers (or arbitrators) acted with bias, were unduly influenced, committed fraud, or engaged in criminal conduct. Seltzer further argues, however, that even if it is conceded that the scope of authority issue was properly before the trial court, in this case the appraisers acted within their authority.

Although there is little Pennsylvania authority directly on point, the authority that does exist supports Boulevard's position. It is true that appraisal pursuant to private agreement has been analogized to common law arbitration. In *Ice City, supra,* the Supreme Court held that for enforcement purposes, appraisal provisions were as enforceable as arbitration provisions, and that both were favored by the public policy of the

Commonwealth as efficient dispute resolution mechanisms. *Id.* at 216–17, 314 A.2d at 240–41. The Court did note, however, that the scope of an appraisal provision was much more limited than the typical arbitration provision since the former provided only for resolution of issues of valuation and the latter provided for resolution of an entire controversy between the parties. *Id.* at 216 n. 12, 314 A.2d at 240 n. 12.

In determining the scope of trial court review in an appraisal, we look for guidance to the scope of judicial review of common law arbitration. Such review is severely limited. This scope of review has aptly been described as follows:

> In arbitration governed by common law principles, the arbitrators are the final judges of both law and fact and the award is not subject to judicial review for mistakes of either unless it is clearly shown that the party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. To prevail on these grounds, actual fraud must be shown ... Similarly, an 'irregularity' will not be found simply upon a showing that an incorrect result was reached. An irregularity which requires reversal of a common law arbitration award refers to the process employed in reaching the result of the arbitration, not to the result itself.

*Gwin Engineers, Inc. v. Cricket Club Estates Development Group,* 382 Pa.Super. 533, 555 A.2d 1328, 1329 (1989) (citations omitted).

In addition, arbitrators' authority is restricted to the powers the parties have granted them and the trial court may examine whether the arbitrators exceeded the scope of their authority. *See Sley System Garages v. Transport Workers Union of America,* 406 Pa. 370, 178 A.2d 560 (1962); *Giant Markets v. Sigma Marketing Systems,* 313 Pa.Super. 115, 459 A.2d 765 (1983). As the *Sley System* Court stated:

> The power and authority of arbitrators are wholly dependent upon the terms of the agreement of submission, and they cannot exercise authority as to matters not included therein, or validly determine the dispute if they violate or

act inconsistently with the terms of the submission....
The scope of matters submitted to arbitration is determined
by the intention of the parties as ascertained in accordance
with the rules governing contracts generally.

*Id.* at 374, 178 A.2d at 561–62 (citations omitted). *See also
Brennan v. General Accident Fire and Life Assur. Corp.,
Ltd.,* 524 Pa. 542, 574 A.2d 580, 583 (1990).

■ Appraisal, like arbitration, is subject to limited judicial
review. In both instances the law favors non-judicial dispute
resolution that the parties have agreed to. Alternate dispute
resolution is economical in terms of time, expenditure of
judicial resources and transactional costs. Limited judicial
review also imposes finality in a contested matter. To permit
anything but limited judicial review defeats the purpose of
appraisal as well as arbitration.

■ We hold that judicial review of appraisal is limited
to fraud, misconduct, corruption or other irregularity causing
an unjust result. *See Gwin Engineers, supra.* We also hold
that the reviewing court may examine the appraisers' scope of
authority and whether they have exceeded it. The powers of
the appraisers are determined by the submission assigned to
them by the parties. Since appraisers do not have authority
to decide matters not included in the submission, the trial
court may review the scope of their authority. Assigning this
review function to the trial court maintains the strict limitation
on review but assures the parties that the appraisers have not
gone beyond the submission assigned to them.

Our conclusion on this issue also finds some support in older
cases, not cited by the parties, involving appraisal clauses
found in fire insurance policies. For example, in *Patriotic
Order Sons of America Hall Assoc. v. Hartford Fire Insur.
Co.,* 305 Pa. 107, 157 A. 259 (1931), the Supreme Court
reviewed the actions of appraisers appointed pursuant to an
agreement between a fire insurer and its insured. The ap-
praisers were charged with assessing the value of the in-
sured's property that had been damaged in a fire and then
assessing the amount of loss or damage sustained to that

property. The amount of coverage provided was calculated using a ratio of these values. The insured alleged that the appraisers had erred in assessing the "sound value" of the property instead of assessing the "actual cash value" as provided in the insurance policy. The Supreme Court rejected this argument, stating:

> In fixing sound value the appraisers fixed actual cash value. Under the very terms of the appraisal agreement their finding could not be contradicted.... [t]he appraisement is final.

> . . . .

> "The general rule undoubtedly is that, *unless restricted by the agreement of submission,* arbitrators are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either...."

*Id.* at 113, 116, 157 A. at 262 (citations omitted).

These comments strongly suggest that the supreme court would apply the principle that a court may review whether arbitrators exceeded their scope of authority with equal force in a case involving review of the findings of appraisers.

This conclusion does not lead us, however, to accept Boulevard's further argument that in this case the appraisers exceeded the scope of their authority. To reiterate, Boulevard argues that the appraisers exceeded the scope of their authority when they concluded that in valuing the subject property they should consider the fact that under present zoning ordinances the property could continue to sustain a building of the size presently on it. Boulevard posits that this conclusion constituted a mistaken interpretation of the lease which required the appraisers to value the land exclusive of buildings and improvements.

We disagree. The scope of the submission to these appraisers, i.e., the scope of authority granted to them, was the task of valuing the subject property. This is what the parties agreed to submit to appraisal under the terms of the lease and this is what they charged the appointed appraisers

to do. In the course of performing this task, the appraisers had to decide what valuation method to use. When they decided that the most appropriate way of valuing this property would be to include consideration of the actual use the property could be put to in future, including the fact that it could continue to sustain a building of the same size as the one presently on the property, the appraisers clearly were not exceeding their authority. Rather, they were making exactly the type of decision that the parties had asked them to make and by which the parties agreed to be bound.

As the Supreme Court has held, in an arbitration case "... once it is determined that a substantive dispute is arbitrable, normally the arbitrator has the authority to decide all matters necessary to dispose of the claim." *Brennan*, 524 Pa. at 542, 574 A.2d at 583. The rule is the same for appraisal matters. Here, the appraisers had to make a variety of decisions in the course of setting a value for the property. One of these permissible decisions was that this property possessed a benefit under the pertinent zoning ordinances and that the existence of this benefit was relevant to valuation. Since the appraisers did not exceed the scope of their authority in making this decision in the course of valuing the property, and there is no other ground alleged for refusing to enforce the appraisers' valuation, we find that the appraisers' valuation is binding.

Boulevard also challenges the trial court's award of rent to Seltzer for the period of slightly over a year during which Boulevard held over as tenants on the property. In the cross-appeal, Seltzer argues that the trial court was correct in awarding rent, but erred in calculating the amount of rent owed and in refusing to award Seltzer attorneys' fees.

We have reviewed the record and find no basis for disagreement with the trial court's determination that Boulevard had no right to occupy the property without payment of any rent for over a year after the expiration of the lease term. Boulevard not only occupied the property during this time, but also received income from its own tenants who occupied the

building. Nothing in Seltzer's conduct relieved Boulevard from its rental obligation.

However, the question remains as to the amount of rent owed. The trial court held that the amount owed was $16,000 per year, "in accordance with the terms of the original Lease Agreement". Trial Court Opinion at p. 10. Seltzer points out, however, that Section 202 of the Lease states the following:

> *Renewal Options—Exercise.* Subject to a sale of said premises either during the original term or during any extended period, as set forth in Section 1801 hereof, TEN-ANT is hereby given the right at its option to extend the original term of this lease for five (5) successive periods of five (5) years each following expiration of the original term hereof. Such options shall be exercised only by written notice given to LANDLORD by TENANT at least one hundred eighty (180) days prior to the expiration of the original term hereof. . . . The annual rental for each such extended term shall be based upon 6% of the then appraised fair market value of the ground or the present rental, whichever is greater.

Based on this section, Seltzer argues that the trial court should not have awarded rental at the rate of $16,000 per annum, the original rental rate, but rather should have awarded Seltzer rent at the rate of six percent of the value of the land, which would yield an annual rental of $60,000.

Although the trial court did not state its reasons for awarding rent for the holdover period only at the original rate of $16,000 per annum, we assume the court did so because it did not find the increased rental provisions of Section 202 of the lease applicable to this situation. We agree that Section 202 does not apply. Boulevard did not exercise the option provided under Section 202 to extend the term of the lease. To the contrary, Boulevard exercised its option to purchase the property in March 1991, several months before the expiration of the initial term in September 1991. Under these circumstances, it would be grossly inequitable to hold Boulevard responsible for the increased rent that would be due

under Section 202 if Boulevard had not exercised the purchase option but rather had elected to extend the lease for an additional five year term.  Such a result would clearly not reflect the intent of the parties as expressed in Section 202.

Finally, we find no error in the trial court's refusal to award Seltzer attorneys' fees.  We have carefully reviewed the section of the lease on which Seltzer relies in asserting this claim and do not find it applicable to the circumstances of this case. The trial court was clearly acting within its discretion in refusing to make an award of attorneys' fees.

The final decree of the trial court is affirmed.