J-A27041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THE MEWS AT BYERS STATION CONDOMINIUM ASSOCIATION, INC. | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : | |
| GREATER NEW YORK MUTUAL INSURANCE COMPANY | : : : : | No. 1047 EDA 2018 |

Appeal from the Order Entered February 26, 2018
In the Court of Common Pleas of Chester County Civil Division at No(s):
No. 2016-03821-CT

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED APRIL 16, 2019**

Appellant, The Mews at Byers Station Condominium Association, Inc.

("The Mews"), appeals from summary judgment[1] entered in favor of appellee

_____

[1] Although the Notice of Appeal purports to be from the December 21, 2016 order denying The Mews' petition to set aside the appraisal award, it was properly from the March 27, 2018 order granting summary judgment. We have amended the caption accordingly. Because The Mews filed its Notice of Appeal within 30 days of the summary judgment order, we have jurisdiction. ***See Byoung Suk An v. Victoria Fire & Cas. Co.***, 113 A.3d 1283, 1286 n.1 (Pa.Super. 2015). Its failure to appeal within 30 days of the order denying the petition to set aside the appraisal award did not waive its appellate challenges to that order. While the petition was still pending in the trial court, The Mews filed a Complaint setting forth contract and bad faith claims under the same docket number as the petition. No party sought severance or argued that the Complaint was improperly filed under that docket, and the court did not sever the petition and the Complaint *sua sponte*. Thus, the denial of the petition did not end all business in the trial court, and it was not otherwise appealable. ***See McGourty v. Pa. Millers Mut. Ins. Co.***, 704 A.2d 663, 665 (Pa.Super. 1997) (holding order vacating appraisal award was not immediately

Greater New York Mutual Insurance Company ("GNY"). The Mews argues that the court erred in denying its petition to set aside an appraisal award and in entering summary judgment against its breach of contract and bad faith claims. We affirm.

The uncontested facts are as follows. GNY issued a commercial property and general liability insurance policy to The Mews in March 2014 that covered roughly 25 condominium buildings located in Chester Springs. The insurance contract included a provision governing the resolution of disputes over the valuation of covered losses (the "Appraisal" term):

> If we and you disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Petition, 10/19/16, at Ex. B.

In May 2014, a hailstorm caused damage to the roofs, gutters, and siding of the insured buildings. The Mews filed an insurance claim, estimating the value of the damage to be $1.7 million. GNY estimated the value of the

appealable where further proceedings would yet occur in the trial court); ***but see Riley v. Farmers Fire Ins. Co.***, 735 A.2d 124, 127 (Pa.Super. 1999) (holding order vacating appraisal award but failing to direct further proceedings was final and appealable).

damage, including cosmetic damage, to be $423,775, and compensated The Mews for that amount, after accounting for the deductible.

Unsatisfied, The Mews demanded an appraisal, and filed a praecipe for a writ of summons against GNY in April 2016. The Mews selected Mike Owens as appraiser. GNY selected Derek Boggi.

Owens and Boggi conducted a joint inspection of the damage on May 2, 2016. They examined between four and six roofs. Owens informed Boggi that he concluded that the damaged property needed to be replaced, while Boggi informed Owens that he determined that the damage only required repairs. Following the inspection, Owens sent Boggi a written report detailing his valuation of the replacement cost. Boggi did not provide a written valuation to Owens.

Because of the disagreement, the parties decided to choose an "umpire" as required by the policy to settle the differences in their valuations of the loss. Owens and Boggi came to agree upon Richard Sobeck, who provided a written proposal outlining his services as umpire. The proposal stated that Sobeck would review the reports and estimates from both appraisers, perform a visual inspection, and prepare an appraisal report, including "photos, recommendations, [and] budget pricing" based on Sobeck's previous similar projects. N.T., 12/16/18, at 45-46. The parties agreed to Sobeck's terms, signed the proposal, and scheduled an inspection. In advance of the inspection, Owens provided Sobeck with a copy of his valuation.

Owens, Boggi, and Sobeck performed a joint inspection of the damage on August 5, 2016. The parties and Sobeck agreed not to inspect every damaged roof. N.T. at 47, 75-76, 94. During the inspection, Boggi made notes in order to prepare his valuation of the damage. Owens protested that Boggi had not prepared a valuation in advance of Sobeck's inspection, and requested that Sobeck not consider Boggi's valuation.

Following the inspection, Boggi sent a valuation to Sobeck. On August 23, 2016, Sobeck forwarded a copy of it to Owens. Owens requested a second meeting with Sobeck. Sobeck declined, but requested a conference call. Owens did not respond.

Owens received information from code officials regarding potential code upgrade requirements to the areas damaged in the storm, such as the installation of fire retardant plywood along party walls. Owens communicated this information to Sobeck, who discussed the issue with a code officer.

On September 20, 2016, Sobeck submitted his appraisal award to the parties. Sobeck's appraisal matched Boggi's valuation of $486,883.69. Sobeck did not submit his own, separate appraisal report. Boggi signed the award on October 7, 2016, and GNY paid the balance of the appraisal award to The Mews.

On October 19, 2016, The Mews filed a Petition for a Rule to Show Cause Why the Appraisal Award Should not be Set Aside ("Petition"). The Mews also filed a Complaint on November 17, 2016, setting forth claims of breach of contract and bad faith. The breach of contract claim was premised on GNY's

failure to pay for the full amount of loss under the insurance policy, as evidenced by Owen's loss estimate. Regarding its bad faith claim, The Mews alleged that GNY acted in bad faith with respect to evaluating The Mews' loss. Specifically, The Mews claimed that GNY purposefully underestimated and misrepresented the scope of the damage and conspired with Boggi and Sobeck during the appraisal process. GNY filed an Answer and New Matter, and The Mews responded.

The court held a hearing on the Petition on December 16, 2016, at which Owens, Boggi, and Sobeck testified. The court denied the Petition on December 21, 2016. GNY thereafter filed a petition to confirm the appraisal award. The court confirmed the appraisal award by order on March 23, 2017.

In November 2017, GNY moved for summary judgment on the breach of contract and bad faith claims. GNY argued that the court should dismiss the contract claim because the court had already established the amount of loss by confirming the appraisal award. GNY likewise argued that that the court should dismiss the bad faith claim because The Mews' bad faith claim related only to the appraisal process, which the court had already considered when ruling on the Petition.

The court granted the motion and entered summary judgment in favor of GNY. The court stated that The Mews' claim "that the appraisal process was improper" had already "been decided twice": first, when the court had denied the Petition to set aside the appraisal award, and again when it had granted the petition to confirm the appraisal award. Order, 2/26/18, at 1 n.1

The Mews appealed, and raises the following:

1. Did the trial court err in affirming the appraisal award and granting [GNY]'s Motion for Summary Judgment when the appraisal violated the "Appraisal" term of the contract?

2. Did the trial court misapply the legal standard for vacating an appraisal award?

3. Did the trial court err in affirming the appraisal award and granting [GNY]'s Motion for Summary Judgment when [The Mews] was denied a full and fair hearing?

4. Did the trial court err in affirming the appraisal award and granting [GNY]'s Motion for Summary Judgment when the appraisal violated the "coverage" terms of the contract?

5. Did the trial court err in affirming the appraisal award and granting [Greater NY's] Motion for Summary Judgment when the appraisal violated the terms of the umpire's own contract?

The Mews' Br. at 3-4 (suggested answers omitted).

The Mews challenges both the denial of its Petition to set aside the appraisal award and the entry of summary judgment on its breach of contract and bad faith claims. These rulings are reviewed under different standards. The entry of summary judgment is appropriate "where the record demonstrates that there remain no genuine issues of material fact, and . . . the moving party is entitled to judgment as a matter of law." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1182 (Pa. 2010). As review of summary judgment presents a question of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

In contrast, judicial review of an appraisal award is "severely limited" to a clear showing "that the party was denied a hearing or that fraud,

- 6 -

misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." ***Boulevard Assocs. v. Seltzer P'ship***, 664 A.2d 983, 987 (Pa.Super. 1995) (quoting ***Gwin Engineers, Inc. v. Cricket Club Estates Dev. Group***, 555 A.2d 1328, 1329 (Pa.Super. 1989)). An "irregularity" under this standard is not shown by an incorrect result, but "refers to the process employed in reaching the result." ***Id.*** (quoting ***Gwin Engineers, Inc.***, 555 A.2d at 1329). It is an appellant's burden to "establish both the underlying irregularity and the resulting inequity by clear, precise and indubitable evidence." ***F.J. Busse Co., Inc. v. Sheila Zipporah, L.P.***, 879 A.2d 809, 811 (Pa.Super. 2005) (reciting standard for appellate review of an arbitration decision, citation and quotation marks omitted); ***see Hozlock v. Donegal Cos./Donegal Mut. Ins. Co.***, 745 A.2d 1261, 1263 (Pa.Super. 2000) ("For purposes of judicial review, appraisal is analogous to common law arbitration").

A reviewing court may also determine whether an appraiser has exceeded the scope of the authority granted to it by the parties. ***Boulevard***, 664 A.2d at 987. However, unless restricted by the terms of the submission, appraisers "are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either." ***Id.*** at 988 (quoting ***Patriotic Order Sons of Am. Hall Assoc. v. Hartford Fire Insur. Co.***, 157 A. 259, 262 (Pa. 1931)). An appellate court reviews a trial court's decision to affirm, modify, or vacate an appraisal arising from an insurance contract for an abuse

of discretion or error of law. *Hartford Ins. Co. v. O'Mara*, 907 A.2d 589, 593 (Pa.Super. 2006) (*en banc*).

## I. The Appraisal Provision

The Mews' first argument is that the appraisal process violated the appraisal provision of the insurance policy. According to The Mews, the contract language obligated Boggi to submit a valuation of the loss to Owens prior to Sobeck's inspection. In support, The Mews points to the contract language stating, "The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire." The Mews' Br. at 13. The Mews contends that this order of events was necessary to ensure the umpire would only review the areas of difference between the two valuations. Instead, Boggi conducted an inspection at the same time as Sobeck. Sobeck was therefore unapprised of the parameters of the differences at the time of the inspection, and, as he did not receive Boggi's estimate until afterward, "the 'differences' were ultimately never submitted to the umpire." *Id.* at 14. The Mews argues "[t]his was a clear breach of the explicit procedural requirements of the contract, and as such, summary judgment in favor of [GNY] was inappropriate." *Id.*

We first address the claim for breach of contract. A court must not modify the plain meaning of a contract's language in determining the terms of the agreement. *Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 187 (Pa.Super. 2013). A contract that is silent on a specific contingency is unambiguous, and a reviewing court must not impose new terms to vary the

agreement. ***Seven Springs Farm, Inc. v. Croker***, 748 A.2d 740, 744 (Pa.Super. 2000) (*en banc*).

The insurance policy at issue provides that the parties' appraisers choose an umpire, "state separately the value of the property and amount of loss," and "submit their differences to the umpire." The policy does not address at what point the umpire may inspect the property, and therefore does not prevent an umpire from inspecting the insured property prior to receiving the valuations of both parties. Thus, the procedure followed here, wherein the Owens submitted a valuation, Sobeck inspected the property, Boggi submitted a valuation, and Sobeck decided the differences, did not violate the plain contract terms. ***Sw. Energy Prod. Co.***, 83 A.3d at 187. The Mews has failed to establish that GNY breached the appraisal provision of the contract, and the entry of summary judgment was appropriate.

Second, we address the argument that the appraisal process employed in this case required the court to grant The Mews' Petition to set aside the award. The trial court concluded that "Boggi's failure to submit his valuation of loss prior to the umpire's inspection of the property did not create an irregularity in the appraisal process [and] did not lead to any unjust, inequitable or unconscionable award." Trial Court Opinion, filed May 2, 2018, at 9. We agree.

The trial court found that at the time of the inspection, Sobeck was aware that the differences between Owens' and Boggi's valuations would boil down to replacement cost versus repair cost. ***See*** Tr. Ct. Op. at 7. Owens

testified as much, and stated that the reason he wanted Boggi's report prior to Sobeck's inspection was so that he could amend his estimate and negotiate with Boggi. **See** N.T. at 36. Sobeck also testified that he understood this to be the difference between the parties. **Id.** at 78.

Moreover, the fact that Boggi submitted his valuation after Sobeck's inspection had no bearing on Owens' ability to contest Boggi's valuation. Owens sent Sobeck a number of emails during the month after he received Boggi's valuation, in which he could have contested any errors or outlined any differences; he did not do so, because, as he testified, "the issues were fairly clear." Tr. Ct. Op. at 8 (citing N.T. at 34); **see also** Tr. Ct. Op. at 11. Owens also failed to respond to Sobeck's request for a conference call. **Id.** at 8, 11 (citing N.T. at 42, 62). Thus, we conclude the trial court did not abuse its discretion in denying The Mews' Petition on the basis that an irregularity in the procedure caused an unjust result. **See Hozlock**, 745 A.2d at 1266 (affirming denial of petition to vacate appraisal award, stating that the court would not assume the umpire did not consider the proposal of each appraiser where there was no "evidence of particular unfairness in the process").

## II. The Standard of Review

The Mews next argues that the court applied the wrong standard for reviewing an appraisal award. The Mews complains that when the court denied its Petition, the opinion accompanying the order stated that "the Petitioner must show actual fraud, involving collusion with one of the parties, or misconduct intended to create a fraudulent result." The Mews' Br. at 15

- 10 -

(quoting Op. of 12/21/16, at 4-5). The Mews contends that the language relevant to fraud is inapplicable in the instant case, as The Mews has not alleged fraud, but a "procedural irregularity" that "[e]ffectively deprived [Owens] of an opportunity to argue his position to the umpire." **Id.** at 15. The Mews also alleges that Sobeck's adoption of Boggi's valuation "is evidence of collusion between [GNY]'s appraiser and the umpire to fix the [award]." **Id.** at 16.

The Mews misrepresents the standard for setting aside an appraisal award that the trial court set forth in its opinion. The paragraph of the trial court opinion containing the offending language reads in full:

> To set aside an award the court must find fraud, misconduct, corruption, or similar irregularity, leading to an unjust, inequitable, or unconscionable result. **See, Runewicz v. Keystone Insurance Co.**, 383 A.2d 189 (Pa. 1978); **Allstate Insurance Co. v. Fioravanti**, 299 A.2d 585 (1973); **Harwitz v. Selas Corp. of America**, 178 A.2d 617 (1962). Furthermore, to prevail on this ground, the Petitioner must show actual fraud, involving collusion with one of the parties, or misconduct intended to create a fraudulent result. **See, Allstate Insurance Co. v. Fioravanti**, supra. at 589. An argument that the arbitrators were prejudiced or partial, or that they reached an award so unjust that it constitutes constructive fraud, will not be heeded. **Id.** Similarly, an "irregularity" will not be found simply upon a showing that an incorrect result was reached. **Press v. Maryland Casualty Co.**, 324 A.2d 403 (1974).

Op., 12/21/16 at 4-5 (some italics added).

Clearly, The Mews has taken the trial court's reference to fraud out of context; the court's opinion stated all of the bases upon which it may set aside an appraisal award, which include fraud. As the court later explained in its

Rule 1925(a) opinion, it did not deny The Mews' petition solely because it did not find fraud or misconduct, but because "there was no irregularity in the appraisal process alleged by [The Mews] that was sufficient to justify vacating the appraisal." Tr. Ct. Op. at 10. We therefore disagree that the court employed the wrong standard in ruling upon the Petition.

Additionally, The Mews' bald claim that Sobeck's adoption of Boggi's valuation is evidence of collusion warrants no relief. The Mews did not argue collusion in support of its Petition, and thus it is waived. To the extent The Mews argued collusion in support of its bad faith claim, that claim is not addressed in this issue, which relates only to the standard employed by the trial court in denying the Petition.

Moreover, the Mews' bad faith claim is premised on the actions of the appraisers, while a challenge to an appraisal award provides the proper avenue for relief for fraud and misconduct during appraisal proceedings. The Mews' cannot use a bad faith claim to supplant the settled standard of review for setting aside an appraisal award, and obtain a second bite at the apple.

Finally, had The Mews made this argument at the appropriate time, it would have failed, as The Mews does not assert that the contract prohibited the umpire from adopting an appraiser's estimate as his own, and The Mews offer no other evidence of collusion. *See Everett Cash Mut. Ins. Co. v. Krawitz*, 633 A.2d 215, 217 (Pa.Super. 1993).

**III. Full and Fair Hearing**

The Mews contends that it was denied a full and fair hearing throughout the appraisal process, for four reasons. We address each argument in turn.

First, The Mews argues Boggi's failure to give Owens his valuation prior to Sobeck's site inspection hindered Owens' ability to defend his estimate and rebut Boggi's estimate. This claim is simply a recharacterization of the allegations of The Mews' first issue. **See** section I, *supra*. As discussed above, The Mews has failed to establish that receiving Boggi's valuation after Sobeck's inspection prevented Owens from fully participating in the appraisal process. Owens communicated with Sobeck repeatedly after Owens obtained Boggi's valuation, and Owens did not respond to Sobeck's offer to participate in a conference call.

Second, The Mews claims Sobeck did not consider Owens' information regarding code compliance when determining the award. This claim has no merit, as the court found that Sobeck did consider the code requirements, and credited his testimony that he did not include the cost of upgrades in the appraisal award because he discussed the issue with a Code Enforcement Offer and did not believe that any code upgrades were required. Tr. Ct. Op. at 12. (citing N.T. at 30, 81-82). We reassert that appraisers are the final judges of both law and fact, and a challenge to an appraiser's legal or factual conclusions will not undermine the award. **Boulevard**, 664 A.2d at 988.

Third, The Mews' argues Sobeck based the award on estimates provided by "other parties" that Boggi forwarded to him and that Boggi and Sobeck

already secretly discussed without Owen. As evidence in support of this claim, The Mews' points to a letter written by Owen in which he claimed to have received an e-mail from Sobeck "letting [him] know that he had been reviewing reports/estimates from 'other parties which were provided to him by Mr. Boggi.'" The Mews' Resp. in Opp'n to GNY's Mot. for Summ. J. at Ex. A, 4 (unpagintaed).

The court found that The Mews presented no evidence to support the assertion that any "other-party" estimates considered by Sobeck had been provided by or secretly discussed with Boggi. Tr. Ct. Op. at 12. Also, Sobeck's contract alerted the parties that his appraisal report would be based in part upon comparative projects. *Id.* at 13. Owens consented to this arrangement, and has presented no authority to support his position that Sobeck's consideration of the cost of repairing or replacing damage in similar projects deprived Owens of the opportunity to fully participate in the appraisal process.

Finally, The Mews' claims Sobeck only inspected a sample of the damaged roofs, which was contrary to Sobeck's proposal and hindered Owens' ability to defend his estimate. However, as the trial court noted, Owens testified that he "consented to inspecting a representative number of roofs rather than all of them." *Id.* (citing N.T. at 47-48). The Mews does not assert that Owens was prevented from going on every roof to make his own valuation, or assert how the Sobeck's valuation would have changed had Sobeck done so.

The Mews has fully failed to establish that it was prevented from participating in the appraisal process such that it was denied a hearing. We thus find no abuse of discretion in the court's denial of the Petition.

## IV. The "Coverage" Provision

The Mews argues that Boggi's valuation did not include loss due to cosmetic damage, and because Sobeck accepted Boggi's valuation, the final award likewise did not include cosmetic damage. The Mews claims that Boggi told Owens during the initial inspection that he would only consider functional damage. According to the Mews, Boggi and Sobeck exceeded the scope of their authority as appraisals by deciding that the policy did not cover cosmetic damage, and Sobeck's acceptance of Boggi's award indicates "misconduct or an irregularity in the appraisal."

The Mews never made the portion of the policy defining coverage part of the certified record, and therefore waived any claim necessitating interpretation of the "coverage" term of the policy. Regardless, GNY agreed prior to the appraisal to include the cost of cosmetic damage in its valuation of the loss. Tr. Ct. Op. at 2. And, the trial court credited the testimony of Sobeck and Boggi, who testified that the award did include the cost to repair cosmetic damage. *Id.* at 14-15 (citing N.T. at 58, 76). We thus find no merit to this claim.

## V. Sobeck's Proposal

In its final issue, The Mews argues that when the parties selected Sobeck as umpire, they based their decision on the written terms of Sobeck's

- 15 -

proposal, which included a promise to review the reports of each appraiser, perform a visual inspection of all roofs, and prepare an extensive appraisal report, including photos, recommendations, and budget pricing. The Mews complains that Sobeck did not review Boggi's report, since it was not prepared prior to his inspection; did not inspect all of the damaged roofs; and did not prepare his own appraisal report, but rather signed off on Boggi's report. The Mews clarifies that this issue goes not to the denial of the Petition, but to the claims for breach of contract and bad faith.

We fail to see how the appraisal methods Sobeck employed violated the plain terms of the insurance policy, which imposed no particular methods. Thus, The Mews claim that Sobeck's violations of his own proposal cannot sustain a breach of contract claim against GNY.

As we stated above, a bad faith claim premised on the actions of appraisers cannot supplant the settled standard of review for setting aside an appraisal award, which provides relief for fraud and misconduct. Moreover, The Mews has failed to set forth how Sobeck's alleged violations of his proposal meets the high threshold required of evidence to prove that GNY acted in bad faith in resolving the insurance claim. *See Berg v. Nationwide Mut. Ins. Co., Inc.*, 189 A.3d 1030, 1037-38 (Pa.Super. 2018) (explaining standard for a bad faith claim). As the trial court noted, the evidence indicates that Sobeck reviewed both parties' valuations of loss; Owens consented to performing a sample inspection, rather than going on all the roofs; and Sobeck did not find it necessary to generate his own report, and therefore did not charge the

parties for one. Tr. Ct. Op. at 16-17 (citing N.T. at 47-48, 90-91). Summary judgment was appropriate.

Having found no issues of merit, we affirm the entry of summary judgment in favor of GNY.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/16/19</u>