J. A02037/20

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| PROFESSIONAL, INC. D/B/A PROFESSIONAL AUTO BODY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MUTUAL BENEFIT INSURANCE COMPANY, | : | No. 1155 WDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Order Dated June 27, 2019,
in the Court of Common Pleas of Blair County
Civil Division at No. 2017-GN-2597

BEFORE:  SHOGAN, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      FILED NOVEMBER 17, 2020

Mutual Benefit Insurance Company ("Mutual") appeals from the June 27, 2019 order entered by the Court of Common Pleas of Blair County sustaining in part and overruling in part Mutual's preliminary objections to Professional, Inc. d/b/a Professionals Auto Body ("Professionals") amended complaint.  After careful review, we affirm, albeit for different reasons than those expressed by the trial court.[1]

The trial court provided the following factual and procedural history:

> [Professionals] is an automobile body repair shop with two locations in the Altoona, Blair County, [Pennsylvania] area.

---

[1] "Moreover, we are not limited by a trial court's rationale, and we may affirm its decision on any basis."  Rosiecki v. Rosiecki, 231 A.3d 928, 933 (Pa.Super. 2020) (citation omitted).

[Mutual] is an insurance company licensed to and providing automobile insurance coverage for automobile owners in Pennsylvania [].

In the amended complaint[], Professionals alleges that on various dates leading up to the filing of its pleading[,] individuals insured by [Mutual] brought their vehicle to Professionals for repairs in accord with their policy of insurance.

In addition, Professionals alleges that third parties, who claimed that their vehicle was damaged by the negligence of an individual insured by [Mutual], brought their vehicle to Professionals for repairs.

Each automobile owner who brought their vehicle to Professionals for repairs executed a written authorization for Professionals to repair their vehicle and to perform the repairs reasonable and necessary to restore the vehicle to its pre-loss condition.

Each individual also executed an "Assignment of Proceeds" authorizing Professionals to recover any unpaid amount for services rendered and repairs made by Professionals pursuant to the written authorization each executed.

The assignment was in the following form:

> ASSIGNMENT OF PROCEEDS
> Hereinafter, "Customer," has suffered damages to his/her vehicle following an accident. The repairs recquired [sic] following Customer's accident and for which Customer utilized the services of Professionals [] do constitute a compensable loss under an insurance policy. Those repairs are to be paid for by _____ hereinafter "Insurer," according to the terms of the underlying policy.

Customer has a right to payment of all costs that were necessary for repair of his/her vehicle, and Insurer is obligated by the applicable insurance policy to pay for such repair costs. The repair costs that Insurer is obligated to pay do constitute "proceeds" of the policy.

In consideration of Professionals['] agreement to make all repairs to Customer's damaged vehicle, Customer desires to and does hereby assign to Professionals [] any and all right, claim or other interest in any proceeds necessary to pay for repairs to Customer's vehicle as stated in the attached contract for repairs. As such, Professionals [] is entitled to pursue payment of all proceeds of the insurance policy from Insurer in the amount of $_____ as stated in the attached contract for repairs.

If any portion of the above agreement should be found unenforceable by a court of law, the remainder of the agreement shall remain operative, valid and enforceable.

If any portion of the above agreement should be found to be invalid, Customer (Assignor) shall still be liable to Professionals [] (Assignee) for the total amount of repairs of Professionals [] to pursue payment for the repairs it has made to Customer's (Assignor's) vehicle as stated in contract for repairs.

This agreement is the entire agreement relative to the assignment of Customer's rights to pursue payment from Insurer for those repairs of Customer's vehicle set forth in the attached contract for repairs. Any other agreement that may be made relative to Customer's rights to pursue

payment from Insurer for repairs of Customer's vehicle is set forth in the attached contract for repairs shall be held invalid and superseded by this assignment of Customer's rights.

For the mutual exchange of promises and intending to be legally bound hereby, witness my hand and seal this __ day of _____ 20__ A.D.

Professionals repaired the vehicles of not only the individuals insured by [Mutual] but also the third party claimants.

[Mutual] made partial payments to Professionals on account of the repairs made to the vehicles.

Professionals seek[s] in these actions the balance[] owed by [Mutual] on account of [its] underpayment for repairs to the vehicles. In addition, Professionals requests "delay time costs" as well as administrative costs" with respect to each vehicle.

Trial court memorandum, 6/27/19 at 3-4.

Each policy of insurance issued by [Mutual] to its customers contained the following provision:

[]APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select [a] competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

> 1. Pay its chosen appraiser; and
>
> 2. bear the other expenses of the appraisal and the umpire equally.
>
> B. We do not waive any of our rights under this policy by agreeing to an appraisal.[]
>
> In its preliminary objection, [Mutual] argued that each insured had a "full, complete and adequate non-statutory remedy at law" and were therefore foreclosed as a matter of law from bringing this action.
>
> [The trial c]ourt rejected this argument, concluding that the contract provision with respect to appraisal did not impose a mandatory obligation on the insureds to utilize the appraisal method for resolution of the dispute. Further[, the trial court] expressed the opinion that the filing of suit was a revocation of any right to proceed pursuant to the appraisal method. See Dudzinski v. Great American Insurance Company of New York, 90 Pa.Super. 540, 542 (1927).

Trial court memorandum, 9/13/19 at 3-4.

The trial court entered an order on June 27, 2019, sustaining in part and overruling in part Mutual's preliminary objections to Professionals' amended complaint; however, the trial court's order was not docketed until July 3, 2019. On July 29, 2019, Mutual filed a timely notice of appeal. The trial court ordered it to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and Mutual timely complied. The trial court subsequently filed an opinion pursuant to Pa.R.A.P. 1925(a).

On August 9, 2019, Professionals filed with this court a motion to quash appeal, on the ground Mutual's appeal is interlocutory and, therefore, not appealable as of right. (Professionals' motion to quash appeal, 8/9/19 at 5.) Mutual filed an answer to Professionals' motion. On August 23, 2019, this court entered a per curiam order denying Professionals' motion to quash without prejudice to Professionals' right to again raise the issue before the merits panel.

Mutual raises the following issue for our review:

> Whether the trial court erred in denying [Mutual's] Preliminary Objection under Pa.R.Civ.P. 1028(a)(6) in the nature of a petition to compel arbitration with regard to contract claims assigned to Professionals by policyholders of [it], that are subject to a contractually-mandated appraisal procedure, on the grounds that the appraisal provision is voluntary and optional, and was revoked [when] Professionals commenced this action.

Mutual's brief at 5.

Preliminarily, we note Mutual failed to divide the argument section of its brief in compliance with Pa.R.A.P. 2119(a), which requires the argument to be divided into as many parts as there are questions to be argued. We have the authority to dismiss appeals for failing to comply with the Rules of Appellate Procedure, and will do so in cases where such a failure hinders our ability to conduct meaningful appellate review. Kern v. Kern, 892 A.2d 1, 5-6 (Pa.Super. 2005) (citation omitted), appeal denied, 903 A.2d 1234 (Pa.

2006). Here, because our ability to conduct meaningful appellate review has not been hindered, we shall reach a decision on the merits.

Based on our reading of Mutual's brief, the following issues for appellate review can be gleaned from the point headings:

> I. [Whether t]his appeal is properly taken as of right from the trial court's order overruling [Mutual's] preliminary objection under Pa.R.Civ.P. 1028(a)(6)[?]
>
> II. [Whether t]he appraisal provisions in the policies governing the first-party claims are valid and enforceable[?]
>
> III. [Whether Mutual waived] its right to demand appraisal[?]

Mutual's brief at unnumbered page i (extraneous capitalization omitted).

In its first issue, Mutual addresses whether the trial court's order is appealable, thereby invoking this court's jurisdiction to decide the substantive issues before us. (See id. at 20-22.) As noted by Mutual, Professionals does not address this issue in its brief. (See Mutual's reply brief at 3 n.3.) Because this raises an issue of jurisdiction, we may raise the issue sua sponte, regardless of whether Professionals included the issue in its brief. Forrester v. Hanson, 901 A.2d 548, 554 (Pa.Super. 2006) (citation omitted). As the Forrester court further notes:

> This Court does not have jurisdiction to entertain an appeal from a non-appealable, interlocutory order. Davis Supermarkets, Inc. v. United Food and Commercial Workers, Local 23, [] 533 A.2d 1068 ([Pa.Super.] 1987).

"It is well settled that an appeal will lie only from a final order unless otherwise permitted by statute." Techtman v. Howie, 720 A.2d 143, 145 (Pa.Super. 1998). The Pennsylvania Rules of Appellate Procedure define a final order as follows:

Rule 341. Final Orders; Generally

\* \* \* \* \* \*

(b)     Definition of final order. A final order is any order that:

    (1)     disposes of all claims and of all parties; or

    (2)     any order that is expressly defined as a final order by statute; or

    (3)     any order entered as a final order pursuant to subdivision (c) or this rule.

(c)     Determination of finality. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than

> all the claims and parties shall not constitute a final order.

> * * * * * *

Pa.R.A.P. 341(b), (c).

Forrester, 901 A.2d at 554-555.

Here, as noted above, Mutual appeals from the trial court's June 27, 2019 order sustaining in part and overruling in part its preliminary objections to Professionals' amended complaint. As a general rule, orders denying preliminary objections are interlocutory and, therefore, are not appealable as of right. Armstrong World Industries, Inc. v. Travelers Indem. Co., 115 A.3d 342, 346 (Pa.Super. 2015) (citation omitted), appeal denied, 128 A.3d 218 (Pa. 2015). However,

> [o]ur jurisdiction to review the propriety of the trial court's order overruling preliminary objections in the nature of a motion to compel arbitration is conferred by Pa.R.A.P. 311(a)(8), which provides that an interlocutory appeal may be taken as of right from any order made appealable by statute, and by 42 Pa.C.S.[A.] § 7320(a)(1) of the Uniform Arbitration Act, which authorizes an appeal from "[a] court order denying an application to compel arbitration." We review such a claim "for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence." Taylor v. Extendicare Health Facilities, Inc., 113 A.3d 317, 320 (Pa.Super. 2015). We employ a two-part test to determine whether arbitration was proper. First, we ascertain whether a valid agreement to arbitrate exists. If so, we examine whether the dispute is within the scope of this agreement. Pisano v. Extendicare Homes, Inc., 77 A.3d 651, 654 (Pa.Super. 2013); see also Elwyn v. DeLuca, 48 A.3d 457, 461 (Pa.Super. 2012).

Collier v. National Penn Bank, 128 A.3d 307, 309 (Pa.Super. 2018), appeal denied, 138 A.3d 1 (Pa. 2016).

Before we can apply the two-part test set forth in Collier, we must first address Professionals' claim Mutual did not file a petition to compel arbitration; rather, "[it] requested in its preliminary objections that the amended complaint be demurred for failure to follow the appraisal method." (Professionals' brief in support of motion to quash, 8/9/19 at 2-3 (extraneous capitalization omitted).) Specifically, Professionals contends the language cited by Mutual in its preliminary objections is not a valid agreement to arbitrate, arguing, "[t]he cited language is unconscionable and [is] a contract of adhesion." (Id. at 3.) Professionals further alleges Mutual never asked the trial court to either compel arbitration or direct the parties to engage in the appraisal method. (Id.)

In response, Mutual characterizes Professionals' argument as one of "form over substance," and directs us to this court's decision in Midomo Co. v. Presbyterian Hous. Dev. Co., 739 A.2d 180 (Pa.Super. 1999). In Midomo, a dispute arose over a lease agreement containing an arbitration provision. Midomo, 739 A.2d at 183. As in the instant matter, preliminary objections were filed instead of a petition to compel arbitration. Id.

The Midomo court stated it would not "exalt form over substance." Id. (citation omitted). The court ultimately held the trial court's order, "denying preliminary objections alleging alternative dispute resolution and requesting

that the [trial] court order [one of the parties] to arbitrate the dispute was an interlocutory order, appealable as of right pursuant to Pa.R.A.P. 311(a)(8), Pa.R.Civ.P. 1028(a)(6) and Note, and 42 Pa.C.S.A. §§ 7342(a), 7320(a)(1), and 7304(a)." Id. (citation omitted). Accordingly, the Midomo court concluded it had jurisdiction to address the issues raised on appeal. Midomo, 739 A.2d at 183.

The procedural history of the instant case is on point with the procedural posture in Midomo. Here, in its preliminary objections, Mutual requested the trial court to "dismiss stay [sic] Professionals' breach of contract claim relating to the first party claims based upon the pendency of a prior agreement for alternative dispute resolution." (Mutual's preliminary objections to Professionals' amended complaint, 10/12/17 at 14, ¶ 55.) By comparison, the preliminary objections before the Midomo court were described as a request the trial court "determine that a valid arbitration agreement existed and to order [the plaintiff] to seek its remedy in arbitration." Midomo, 739 A.2d at 183. As in Midomo, we will not exalt form over substance, and we find that we may proceed to apply the two-part test set forth in Collier, supra.

Initially, we again mention the instant matter concerns an appraisal clause, not an arbitration clause. However, this court has held:

> Both the appraisal and arbitration process are intended as alternatives to litigation whereby the parties submit the issues in dispute to an independent counsel for resolution. The only distinction between

> arbitration and appraisal is the scope of issues encompassed in each proceeding. An appraisal is limited to determining the amount of the loss with all other issues reserved for settlement by either negotiation or litigation, while arbitration considers all issues necessary for disposition of the entire controversy between the parties. Ice City, Inc. v. Ins. Co. of North America, [] 314 A.2d 236, 240 n.12 ([Pa.] 1974). For purposes of enforceability, there is no distinction between arbitration and appraisal. Ice City, 314 A.2d at 240; see also Boulevard Associates v. Seltzer Partnership, [] 664 A.2d 983, 987 ([Pa.Super.] 1995) (scope of judicial review of an appraisal conducted pursuant to a private agreement analogous to that used to review private agreement providing for common law arbitration). We find that an appraisal order is analogous to an arbitration order and will review it accordingly.

McGourty v. Pennsylvania Millers Mut. Ins. Co., 704 A.2d 663, 664 (Pa.Super. 1997) (per curiam) (emphasis added).

As noted above, when deciding whether a trial court should have compelled arbitration, we employ a two-part test: (1) does a valid agreement to arbitrate exist, and (2) is the dispute within the scope of the agreement. See Smay v. E.R. Stuebner, Inc., 864 A.2d 1266, 1270 (Pa.Super. 2004). "[I]f a valid arbitration agreement exists between the parties and [the plaintiff's] claim is within the scope of the agreement, the controversy must be submitted to arbitration." Highmark Inc. v. Hospital Service Ass'n. of Northeastern Pennsylvania, 785 A.2d 93, 98 (Pa.Super. 2001). "[T]he scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." Henning v.

State Farm Mut. Auto. Ins. Co., 795 A.2d 994, 996 (Pa.Super. 2002) (citations and internal quotation marks omitted).

This court has thoroughly reviewed the submissions of the parties and the trial court opinion in this matter, we disagree with the trial court's conclusion the initiation of suit acted as a revocation of any right to proceed pursuant to the appraisal method. (Trial court memorandum, 9/13/19 at 6.) However, because we find the dispute in question is not within the scope of the agreement, we affirm the decision of the trial court.

The relevant portion of the appraisal clause reads, "If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser." (Personal auto policy, appraisal, at 13.) The language in the commercial auto policy is nearly identical. (See commercial auto policy, business auto conditions, at 7.)

In finding the appraisal agreement was not mandatory, the trial court focused on the use of the word "may" in the first sentence but ignored the use of the word "will" in the second sentence. The language of the policy and the use of the word "may" makes it clear an appraisal is not a condition-precedent to suit in every case. In that sense, the clause is not mandatory. However, the use of the word "will" in the second sentence demonstrates, once either party demands such an appraisal, the other side must comply. Thus, once there is a dispute over the amount of loss and either party demands an

appraisal, the clause becomes mandatory and the other party must select an appraiser.

Moreover, we find the trial court's reliance on Dudzinski, supra, misplaced. Leaving aside the question of whether the holding in Dudzinski is stale, we find it to be distinguishable. In Dudzinski, the insurance company waited until after the insured rested its case at trial to raise the issue of a mandatory appraisal. Dudzinski, 90 Pa.Super. at 541-542. In finding revocation, this court relied on the insurance company's failure to "raise preliminarily any question with respect to the prematurity of this suit" as well as the fact that the dispute was not over the amount of loss but a question of liability. Id. at 544 (emphasis added). Certainly, the implication of the discussion in Dudzinski, is the result would have been different if the insurance company had raised the issue in a timely fashion and had the claim been within the scope of the appraisal clause. Id.

Here, Mutual promptly invoked the issue of the appraisal at the earliest possible opportunity, by raising it in preliminary objections.[2] Given this, we disagree with the trial court's reliance on Dudzinski for the proposition the filing of suit acted as a revocation of the appraisal clause. Accordingly, for the

---

[2] In its brief, Mutual contends it invoked the issue with respect to some of the first-party claims at issue pre-suit. (Mutual's brief at 12-13.) The trial court did not address this issue and did not make any findings of fact with respect to it; because such a finding is not necessary to our disposition, we decline to address it.

reasons discussed above, we find there is a valid and enforceable appraisal agreement in this matter.

However, this finding does not end our inquiry. The second part of the test requires that we ascertain if the dispute falls within the scope of the agreement. See Smay, 864 A.2d at 1270. The personal auto policy in the section entitled "Appraisal" provides for one "if we and you do not agree on the amount of loss." (Personal auto policy, appraisal, at 13.) The commercial auto policy in the section entitled "Business Auto Conditions," the subsection entitled "Loss Conditions," and under the further subheading "Appraisal for Physical Damage Loss" provides, "if you and we disagree on the amount of 'loss' other may demand an appraisal of the 'loss.'" (Commercial auto policy, business auto conditions, at 7.) Neither policy contains a definition of the word "loss."

In pertinent part, Black's Law Dictionary defines loss as "the disappearance or diminution of values, usu[ally] in an unexpected or relatively unpredictable way." Black's Law Dictionary, 482 (5th Pocket ed. 1996). This court has reviewed the law on this issue, and while it has been unable to find a case which provides a specific definition of loss, there are certain commonalities between the cases: (1) the word loss is used interchangeably with the word damage or damages; (2) appraisal disputes generally arise directly between the insured and the insurance company, not the insurance company and a third-party assignee; and (3) the appraisal takes place before

- 15 -

repairs are made to ascertain the nature and breadth of the loss or damages and whether the property in question requires repair or replacement. See McGourty, supra (insurance company demanded enforcement of appraisal clause where parties could not agree on the value of fire damage); see also Militello v. Allstate Prop. and Cas. Ins. Co., 2015 WL 7300530, at **1-2 (W.D.Pa. Nov. 18, 2015) (insurance company sought to enforce appraisal clause to resolve ongoing dispute over extent of repairs needed to barn); Correnti v. Merchants Pref. Ins. Co., 2013 WL 373273, at *1 (E.D.Pa. Jan. 31, 2013) (granting summary judgment to insurance company after homeowners refused to participate in appraisal of extent of damages to home); Sydney v. Pacific Indem. Co., 2012 WL 3135529, at *1 (E.D.Pa. Aug. 1, 2012) (insurance company demanded enforcement of appraisal clause after dispute over whether roof needed to be replaced or repaired); Campenalla Constr. Co. v. Great Amer. Ins. Co., 2010 WL 2076089, at *1 (E.D.Pa. May 21, 2010) (construction company sought to enforce appraisal clause after disagreement with insurance company over water damages to home they were renovating).[3]

Here, the loss in question has already been repaired. Moreover, Mutual has already rendered partial payment for those repairs. (Mutual's reply brief

---

[3] "While we recognize that federal court decisions are not binding on this court, we are able to adopt their analysis as it appeals to our reason." Kleban v. Nat. Union Fire Ins. Co. of Pittsburgh, 771 A.2d 39, 43 (Pa.Super. 2001) (citation omitted).

at 9-10.) In its reply brief, Mutual admits the dispute in question is about the use of new parts rather than refurbished parts to the make those repairs and how much those new parts cost. (Id. at 1-2.) Further, in its reply brief, Mutual appears to raise a coverage dispute, arguing the use of "new original equipment manufacturer ("OEM") parts . . . may not be coextensive with . . . contractual obligations to its insureds." It is settled a coverage dispute is not within the scope of an appraisal clause; only the monetary value of the loss at issue. Ice City, Inc. v. Ins. Co. of N.A., 314 A.2d 236, 241 (Pa. 1974) (parallel citation omitted); McGourty, 704 A.2d at 664. Thus, we find the dispute in question is not about the "amount of loss" or "physical damage loss" but rather is a dispute over the costs of repairs only. We are simply unable to find, and Mutual has provided no legal support for, a claim a dispute over the cost of already completed repairs falls within the scope of an appraisal clause. Accordingly, we affirm the order of June 27, 2019.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2020